STATE

v.

Samuel BRAXTER.

No. 88–570–C.A.

Supreme Court of Rhode Island.

Jan. 8, 1990.

James E. O'Neil, Atty. Gen., Jeffrey J. Greer, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine A. Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

SHEA, Justice.

This case is before us on appeal by the defendant following his conviction of entering a building with intent to commit rob-

bery and conspiracy to commit robbery. We sustain defendant's appeal, vacate the judgment of conviction, and remand the case for a new trial. The facts of the case insofar as pertinent to this appeal are as follows.

On August 26, 1986, defendant, Samuel Braxter (Braxter), was arrested and charged with entering a building with intent to rob, conspiracy to rob, and larceny of over $500 in currency.[1] He was tried before a jury in the Providence County Superior Court on February 5, 8, and 9, 1988.

The defendant filed a motion in limine to prohibit the state from eliciting any testimony from Providence police witnesses about information they had received from an informant, Michael Briley (Briley), who had disappeared before trial. The informant had alerted the police to a planned robbery of the Louttit Laundry Corporation on Cranston Street in Providence set for August 26, 1986. As a result, the police arrived early to intercept the would-be robbers. The defendant argued that such testimony would be impermissible hearsay and violative of his Sixth Amendment rights. The prosecutor argued that such evidence should be admitted, not for the truth of the matter asserted therein, but under *State v. Palmigiano*, 112 R.I. 348, 309 A.2d 855 (1973), to show why the police apprehended defendant. The trial justice denied the motion because he did not foresee a hearsay problem. He stated that the police officers would not testify concerning the content of any information they had received but would simply say that they were there based on certain information.

Upon direct examination at trial Detective Thomas Jacquard (Jacquard) testified that he received information from Briley on August 22, 1986, about a holdup that would take place at Louttit Laundry "on August 22 [sic 26], 1986." In response, Jacquard said, five or six armed police officers "staked out" the laundry that morning and secured the building between about 5 a.m. and 6 a.m. He explained that the second-floor area was secured because Briley had

informed him that was where the holdup was going to take place since that floor contained a fur-storage lockup along with the business offices in which receipts were stored. He also testified that he knew that Briley was employed by Louttit Laundry at the time.

Soon after the employees had arrived at about 6 a.m., Briley, who set up the arrest of the two perpetrators, came to the side door of the laundry and had a quick conversation with Jacquard. Briley then left the building, and shortly thereafter Jacquard observed three men, one of whom was Briley, crossing the field that is directly opposite the laundry. Approximately three minutes later, the other two men entered the laundry building and came upstairs to the area police had staked out. They were immediately arrested, and defendant was one of these men. He was wearing a baseball cap, with tape over the label on the front of the cap, and sunglasses. Jacquard said he was carrying an opened knife in his left hand.

The state had marked for identification both a statement given to the police by Michael Briley on August 22, 1986, and a rights-waiver form he had filled out on August 22, 1986. Detective Jacquard explained that he had obtained the statement four days before the incident at the laundry and that Briley had signed his name in Jacquard's absence. He also stated that he had read Briley his constitutional rights, which Briley appeared to understand, and that Briley had signed his name in Jacquard's presence. The prosecutor asked whether Briley understood that he was implicating himself in the crime, and Jacquard answered, "That is correct." The defendant objected, and the trial justice sustained the objection but gave no further instruction.

Immediately after the prosecutor finished examining Jacquard, defendant moved to strike nearly all references to Briley and to the information received by the police from him. When the trial justice denied that motion, defense counsel ex-

---

1. The third charge, stealing over $500, was dismissed at the start of trial.

plained that it had become necessary to cross-examine Jacquard about his dealings with Michael Briley, and he asked the court for a cautionary instruction regarding the proper use of any hearsay statements that might come out. On cross-examination, many more details of the police department's conversations with Briley and the alleged conspiracy were elicited.[2]

The state also put codefendant Thomas Leo Phillips (Phillips) on the stand. Although Jacquard had testified that Phillips was the other man who appeared and was arrested with defendant on the second floor, Phillips denied that he was with defendant that morning. He said he did not remember whether he saw defendant on that day and that he had been by himself when he was arrested. He also said that he had no idea what defendant was doing in the Louttit Laundry building on that morning. Phillips did testify that he was currently serving time at the Adult Correctional Institutions on charges arising out of this incident and further said that although he had not been threatened concerning his testimony in this case, "[b]eing in maximum security, your life can be threatened anyways if you testify against somebody."

The trial justice denied defendant's motion to strike Phillips's testimony and also denied a motion to pass. The jury found defendant guilty on charges of both conspiracy to commit robbery and entering a building with intent to commit robbery. He was sentenced to ten years on each count, to run concurrently. Braxter filed a notice of appeal on April 20, 1988.

■ The defendant contends that the prejudicial impact of Michael Briley's hearsay statements far outweighed any possible value they had. He concedes that it

was appropriate for the police to explain their presence at the laundry by indicating that they had received information. He claims, however, that the state elicited from Jacquard on direct examination more details about Briley than were allowable. This forced defendant to attempt to impeach the absent Briley by probing deeper on cross-examination. He argues that not only was the substance of Briley's statements impermissible hearsay but the use of that information violated his Sixth Amendment right to confront his accusers. The state contends that it was defendant himself on cross-examination who brought out most of the details about which he now complains. The state also argues that any error was harmless because the proof of guilt was overwhelming.

Although this court has considered the use of hearsay testimony from unavailable witnesses in criminal trials, it has rarely been confronted so squarely with a question of its admissibility when its effect was so potentially damaging. For instance in *State v. Palmigiano*, 112 R.I. 348, 309 A.2d 855 (1973), a police sergeant was permitted to testify that he was alerted over the radio in his cruiser to look for a white-helmeted, dark-jacketed motorcyclist. The message gave the cyclist's name and the motorcycle registration number. The cyclist was the codefendant in the robbery with which the defendant was charged. The sergeant also testified that he had seen the codefendant on a motorcycle with the defendant as his passenger two days before the robbery.

This court determined that the radio message was not hearsay because the entire purpose of the sergeant's testimony was to show why he apprehended the codefendant.

---

**2.** For example, Detective Jacquard testified on cross-examination that Briley had given a false report to the police on August 20, 1986, in which he claimed to have been robbed by two Hispanic males while driving his laundry truck. Jacquard also testified that Briley recanted that story on August 22, 1986, and admitted that he and defendant had set the incident up to look like a robbery and that they had taken the money and shared it. Jacquard said that Briley could have been charged by the police with larceny and filing a false report of a crime.

Detective Jacquard added that Briley told him that defendant planned another robbery for August 26 and that defendant knew there would be a substantial amount of money on the premises then because he had overheard Briley and another Louttit employee talking about it. The police never questioned the other employee, although they had his name, Jacquard testified. He said that after the August 26 incident Briley admitted that he and defendant had again stolen several hundred dollars from the truck he was driving the night before that incident.

*Id.* at 359, 309 A.2d at 862. The radio message was not offered to prove the codefendant's guilt. *Id.*

In *State v. Bulhoes,* 430 A.2d 1274 (R.I. 1981), a state narcotics inspector testified that he had received a phone call from a reliable confidential informant who told him that the defendant Bulhoes and her son were "actively engaged in selling drugs from their house." He also testified that he met with the informant and gave him some state funds, after which the informant went into the defendant's house and returned with a certain quantity of marijuana.

In *Bulhoes* the defendant had asked for the name of the informant, alleging a violation of her right of confrontation. The trial justice denied the request and explained to the jury that the narcotics inspector's testimony was relevant on the issue of whether the police had probable cause to enter the defendant's property. This court, however, pointed out that probable cause for the search warrant was never an issue for the jury and agreed with the defendant that this testimony was impermissible hearsay, the admission of which justified a new trial.

Unlike the case at bar, this court in *Bulhoes* was asked directly to consider only whether the informant's identity should have been disclosed. In ruling that it should have been, however, the court said it was "significant that the informant's testimony and activities constitute the only direct evidence involving [the defendant] with the crimes charged." 430 A.2d at 1277.

In this case, the confrontation clause and hearsay issues were directly raised below. It is significant that here, as in *Bulhoes,* the informant's testimony constituted nearly all the evidence linking defendant to the crimes charged. Detective Jacquard's testimony placed defendant wearing sunglasses and a baseball cap and carrying a knife at the laundry business early in the morning. He was in the company of another man identified as Phillips. Phillips himself, while admitting that he was serving a sentence on charges stemming from his presence there, denied any involvement with defendant. The only evidence of a conspiracy or plan to rob the laundry came from the absent informant, Briley.

The trial justice permitted the testimony about Briley's conversations with Jacquard to explain why the police were at the laundry building that morning. Evidence to explain police officers' presence at a particular place at a particular time is generally not considered hearsay. *See McCormick on Evidence,* § 249 at 734 (3d ed. Cleary 1984). However, statements of the type related by Jacquard have an impermissible hearsay aspect as well as the permissible nonhearsay aspect. *See id.* McCormick has commented on this particular use of out-of-court statements, noting its "widespread abuse." He states:

> "In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted 'upon information received,' or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great." *Id.*

A number of courts have recognized the prejudicial effect of using hearsay statements of an informant, purportedly to set the context for police actions but in reality as a way of proving the prosecution's case. *See, e.g., United States v. Brown,* 767 F.2d 1078 (4th Cir.1985); *People v. White,* 134 Ill.App.3d 262, 89 Ill.Dec. 115, 479 N.E.2d 1121 (1985); *State v. Douglas,* 204 N.J. Super. 265, 498 A.2d 364 (1985).

In *United States v. Brown* the court granted a new trial because of the extensive testimony by a Federal Bureau of Investigation agent regarding conversations he had had with an informant and with Navy base police. The Fourth Circuit

Court of Appeals noted that the purported background of the case, which was established by hearsay, was that the defendant had stolen a number of cases of shrimp. It was against this background that the balance of the government's evidence was presented. The *Brown* court held that "the effect of the [hearsay] evidence could only have been a substantial bolstering of the government's case by inadmissible hearsay." *Brown*, 767 F.2d at 1084.

■ To avoid the prejudicial impact of this type of hearsay testimony, it is necessary to limit police testimony to the fact that they "received information" that led them to be where they were at a particular time. Testimony by an officer that recounts the substance of a conversation with an informant concerning a crime by the accused is not within the officer's personal knowledge and violates the hearsay rule. *See People v. Pryor*, 181 Ill.App.3d 865, 130 Ill.Dec. 812, 537 N.E.2d 1141 (1989). We agree with the New Jersey Supreme Court, which when confronted with a set of facts similar to this case held that, "When the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." *State v. Bankston*, 63 N.J. 263, 271, 307 A.2d 65, 69 (1973).

In the case at bar, Jacquard testified that he had talked to the informant, Michael Briley, who told him that a *holdup* was going to take place at the Louttit Laundry on August 26, 1986. As a result, the police went there and staked it out. He also explained that they secured the second floor because that was where the *holdup* was going to take place. Jacquard noted that the second floor was where the fur vault was and where receipts were kept. In addition, he testified, he had taken a witness statement from Michael Briley four days before the incident occurred and Briley had read and understood his rights and had signed a rights-waiver form.

This testimony is far more than was necessary to explain the police presence at the laundry. It informed the jury that the

conspiracy for the robbery had already been entered into. As with *Brown*, this information had the effect of bolstering the state's case with impermissible hearsay by showing "as background" that a conspiracy was in the works and that there was an intent to rob the laundry. This testimony was the body of the direct evidence the state presented that would establish the conspiracy and the criminal intent. The rest of the direct testimony established only that defendant and Phillips, who were not known to the owner of the business, had walked into the building while it was open, wearing sunglasses and baseball caps even though it was early morning, and that defendant was carrying a knife. There is more than a reasonable probability that Jacquard's hearsay testimony affected the verdict.

It is true that further details regarding the substance of Jacquard's conversations with Briley came out on cross-examination and that they were extremely damaging to defendant. Nevertheless, there were enough details brought out on direct examination alone to constitute reversible error.

■ As defendant points out, the unavailability of Briley by itself did not provide justification for introduction of his hearsay statements. In this case the only possible exception for an unavailable witness would be Rule 804(b)(3) of the Rhode Island Rules of Evidence, providing for the admissibility of prior statements that tended to subject the declarant to criminal liability. However, as defendant points out, there is no showing that Briley's statements were made against his interest. In fact, there is good reason to believe that they were made in his own interest in an attempt to implicate others and thereby obtain favorable treatment for himself from the authorities.

This court last term recognized that "[a]t the core of the right of confrontation is both the cross-examination of witnesses and the defendant's physical presence as testimony is being given." *State v. Taylor*, 562 A.2d 445, 451 (R.I.1989) (citing *Coy v. Iowa*, 487 U.S. 1012, ——, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857, 864 (1988)). Braxter's confrontation right was violated in

this case. The trial justice's cautionary remarks were not sufficient to remove the taint. *Cf. State v. Bulhoes,* 430 A.2d at 1278 (trial justice's instructions failed to eradicate taint of inadmissible hearsay).

■ Although a determination of this first issue is dispositive, we shall address other issues raised on appeal and discuss the relevant case law on the probability that the questions may arise at the new trial. The additional issues concerned codefendant Phillips's testimony about his own plea and sentence arising from the same incident and testimony about the possibility of threats because of his testimony. The defendant argues that this testimony was highly prejudicial and it constituted reversible error. The state argues that it was proper to admit testimony of codefendant's plea for impeachment purposes and also asserts that the testimony of threats was inconclusive, especially in light of Phillips's unequivocal denial that defendant had threatened him.

■ This court recognizes the "well-established principle of law that use of a coconspirator's guilty plea or conviction as substantive proof of a defendant's complicity is not admissible in evidence." *State v. Parente,* 460 A.2d 430, 434 (R.I.1983). However, such evidence is admissible and not unduly prejudicial when introduced to impeach the credibility of a previously convicted defendant testifying in a codefendant's trial. *Id.* Recognizing that evidence of a codefendant's guilt is amenable to misuse, this court in *Parente* noted that a trial justice has the utmost responsibility to instruct the jury on the limited evidentiary use of a guilty plea or conviction. *Id.* at 434–35.

■ Finally, the general reference by Phillips to the possibility of threats for testifying was undercut by his specific denial that he had been threatened for testifying in this case. He denied that the defendant had threatened him, and in fact he denied that he had been threatened at all. These denials came after his one comment that "[b]eing in maximum security, *your life* can be threatened anyways if you testify against somebody." Evidence of

threats is generally admissible only upon a showing that the defendant "approved, encouraged, or acquiesced" in the making of such threats. *State v. Burke,* 529 A.2d 621, 630 (R.I.1987).

For all the reasons set forth above, we shall sustain the defendant's appeal, vacate the judgment of conviction, and remand the case to the Superior Court for a new trial.