LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Edward Harper was found guilty in the DeSoto County Circuit Court of six counts of sexual battery, two counts of fondling, and two counts of conspiracy to commit sexual battery. Harper was sentenced to a total of fifty years to serve in the custody of the Mississippi Department of Corrections. Harper filed a motion for a new trial and a motion for a judgment notwithstanding the verdict (JNOV). The motions were denied.
¶ 2. Harper now appeals, asserting the following issues: (1) the trial court erred by refusing to sever the counts in the indictment; (2) the trial court erred in failing to conduct a tender-years hearing; (3) the trial court erred in allowing evidence that a co-indictee had pleaded guilty to the same crime; (4) the trial court erred in failing to grant a new trial after evidence of perjury and false accusations of sexual abuse by one of the State’s witnesses was discovered; and (5) cumulative error warrants reversal.
FACTS
¶ 3. In 1993, Harper, who was forty-eight years old, lived with his eighteen-year-old wife, Debra, in a trailer park in DeSoto County, Mississippi. Two girls, S.H. and C.H.[1], ages eight and three, respectively, also lived in the trailer park and spent time playing together. The girls were not related to each other or to Harper. Shortly after Harper and Debra moved into the trailer park, Debra’s sister, Dorothy, came to live with them. Dorothy was sixteen or seventeen years old. Debra owned a dog, and S.H. and C.H. would come over to play with the dog and ride bikes with Dorothy. C.H.’s mother worked nights, and C.H. would sometimes spend the night with the Harpers.
¶4. In February 1994, S.H. told her mother that Harper had “hurt [her] toes.” When questioned further about what happened, S.H. responded, “Momma[,] I can’t tell you because he told me if I told you that he’d kill me, you, and daddy.” S.H. then told her mother that. Harper had exposed his penis to her and touched her breasts. The DeSoto County Sheriffs Department was contacted. After learning of the allegations, C.H.’s mother asked C.H. if anything had happened to her at Harper’s house. According to her mother, C.H. responded, “Momma, [Harper] f— ed me.” Both girls were interviewed and gave details of sexual abuse.
¶ 5. The Harpers moved and were later arrested in Utah. They were charged with thirteen counts of sexual misconduct and conspiracy to commit sexual misconduct. Debra entered a plea agreement and agreed to testify against Harper. Harper posted bond and fled. He was arrested in Wyoming in' 2009, approximately fifteen years later, and returned to Mississippi. At the time of trial, S.H. was twenty-five years old and C.H. was twenty years old.
DISCUSSION
I. MULTI-COUNT INDICTMENT
¶ 6. Harper moved for a severance of the thirteen counts in the indictment. Harper argues the counts in the indictment should have been severed because they involved two distinct victims and the alleged sexual abuse never occurred at the same time.
¶ 7. Mississippi Code Annotated section 99-7-2(1) (Rev.2007), entitled multiple offenses and single indictment, states:
Two (2) or more offenses which are triable in the same court may be charged *1158 in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or pian.
¶ 8. In denying the motion to sever, the trial court stated:
The way the evidence has come in, I see no way in the world this case can be severed. The time elements, the two alleged victims was [sic] all part of a common plan or scheme and it developed that way before the Court in the State’s case in chief. So I think it’s clearly a case that should have been brought through the use of a multi-count indictment. I think it clearly meets the statutory requirements of a multi-count indictment.
¶9. Our standard of review on whether a multi-count indictment should be severed is abuse of discretion. Rushing v. State, 911 So.2d 526, 532 (¶ 12) (Miss.2005). When a motion to sever is made, the State bears burden of making out a prima facie case showing the offenses charged are within the language of the statute. Corley v. State, 584 So.2d 769, 772 (Miss.1991). If the State meets its initial burden, the defendant may rebut the State’s case by showing the “offenses were separate and distinct acts or transactions.” Id. Three elements for the trial court to consider when reviewing a motion to sever are: “whether the time period between the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts, and whether the crimes are interwoven.” Id. The issue of whether the evidence might be admissible pursuant to Mississippi Rule of Evidence 404(b) is not relevant to the trial court’s consideration of a motion to sever offenses in a multi-count indictment. Id. n. 1.
¶ 10. As to the time period between the occurrences, all acts charged in the indictment occurred between November 1, 1993, and February 13, 1994. The acts occurred on multiple occasions during this time period. The trial court found the time element not to be a significantly long period justifying severance. Harper’s actions occurred basically over a three-month period in the same location. We cannot find the trial court erred in finding the time element was not significant.
¶ 11. The second consideration is whether the evidence proving each count would be admissible to prove each of the other counts. The trial court found the evidence proving the crimes was interwoven. We agree with Harper that the testimony of the two victims was distinct. However, the testimony of the other witnesses applied to both victims. Debra and Dorothy testified regarding the abuse of both girls and Harper’s threats against them. Also, each of the girls’ mothers testified regarding the girls spending time at Harper’s home together.
¶ 12. Third, the trial court must consider whether the crimes are interwoven. Harper argues the crimes are not interwoven because the two victims were never together when the abuse occurred. “Whether the victim is common to all crimes has never alone been a factor to determine questions of trials involving multi-count indictments.” Rushing, 911 So.2d at 535 (¶ 17). The trial court found the crimes were interwoven because the witnesses’ testimony overlapped. Also, although there were two victims, the sexual acts were similar in nature, occurred during the same time period, and occurred at the same location.
¶ 13. We find this case analogous to Broderick v. State, 878 So.2d 103 (Miss.Ct. *1159 App.2003). James Broderick was indicted on five counts of prohibited sexual conduct with two minor female relatives. Id. at 104 (¶ 2). Three counts related to one child, and two counts related to the other child. Id. The acts occurred on separate dates between March 1998 and August 2000. Id. at 104-05 (¶ 2). Broderick moved to sever the indictment. Id. at 104 (¶ 4). After a hearing, the trial court denied the motion, finding the indictment proper because the counts arose from a common scheme of sexual misconduct. Id. at 105 (¶ 7). This Court found the trial court did not abuse its discretion in denying the motion to sever. Id. at 105 (¶ 8). This Court also noted the trial court made it clear that the jury was to return each verdict separately on all counts. Id.
¶ 14. After holding a hearing and considering Harper’s motion to sever, the trial court found there would be “no way” to sever the indictment. We cannot find the trial court abused its discretion. Further, like in Broderick, the jury was instructed to return a separate verdict for each count of the indictment. Therefore, this issue is without merit.
II. TENDER-YEARSHEARING
¶ 15. Harper argues reversible error occurred when witnesses were allowed to testify to multiple hearsay statements made by the victims without a hearing on whether the tender-years exception applied.
¶ 16. Regarding exceptions to hearsay, Mississippi Rule of Evidence 803(25) states:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
¶ 17. At trial, C.H.’s mother was asked what C.H. said about her interaction with Harper. C.H.’s mother responded that C.H. said, “Momma, [Harper] f — ed me.” Prior to this statement being elicited, Harper’s counsel objected as to hearsay. The trial court stated: “It is the [t]en-der[-][y]ears [exception and it probably applies, but steer away from hearsay as much as possible.” The trial court did not specifically overrule the objection but held the testimony would be allowed on a “limited basis.”
¶ 18. Over objection of Harper’s counsel, S.H.’s mother testified as follows:
Q. Okay. On February the 14th of 1994, what happened?
A. My daughter came running into our travel trailer and I heard her coming and she stepped on the steps real hard and I said, “Oh, gosh, what’s wrong?” She came in, we had a recliner sitting right there in the door as you come in the trailer, and she said, “Momma, Ed hurt my toes.” And I seen the fear in her and I said, “S.H., baby, what else has [Harper] done to you? Has he done anything? What’s wrong?” And she said, “Momma, I can’t tell you because he told me if I told you that he’d kill me, you and daddy.” And I said, “There is nothing ever too bad to tell mom,” and that’s when she told me what was going on.
[[Image here]]
Q. What did she tell you happened to her ... ?
*1160 A. That [Harper] tried to do bad things to her.
Q. Did she tell you specifically what [Harper] tried to do?
A. He tried to mess with her.
Q. Did she say how?
A. Yes. He pulled his penis out in front of her.
Q. Okay. Did she indicate that [Harper] had touched her?
A. He tried to touch her breast, fondle her.
¶ 19. “There is a rebuttable presumption that children under twelve years of age are within their tender years.” Klauk v. State, 940 So.2d 954, 956 (¶ 6) (Miss.Ct.App.2006) (citing Veasley v. State, 735 So.2d 432, 436 (¶ 16) (Miss.1999)). S.H. was eight and C.H. was three when the abuse occurred, so both children fall under the rebuttable presumption. Before allowing the hearsay testimony, the trial court must make an on-the-record finding to establish the reliability of the child’s statements. Id. The comment to Rule 803(25) sets out the following factors the trial court should consider in determining if there is sufficient indicia of reliability:
(1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declar-ant’s age, knowledge, and experience make it unlikely that the declarant fabricated. Corroborating evidence may not be used as an indicia of reliability. Smith v. State, 925 So.2d 825, 837[¶ 29] (Miss.2006); Hennington v. State, 702 So.2d 403, 415[¶ 53] (Miss.1997). A finding that there is a substantial indicia of reliability should be made on the record.
¶ 20. The trial court failed to hold a hearing outside the presence of the jury to determine the reliability of the hearsay statements of the victims. We must assess whether this error requires reversal. “In order to make that determination we must decide ‘whether the weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing admission of [the] evidence.’ ” Klauk, 940 So.2d at 956-57 (¶ 7) (quoting Veasley, 735 So.2d at 437 (¶ 17)).
¶ 21. First, we note S.H.’s statements relayed by her mother were present sense impressions, which are excepted from hearsay. A present sense impression is “[a] statement describing or explaining an event or condition made while the de-clarant was perceiving the event or condition or immediately thereafter.” M.R.E. 803(1). S.H.’s mother testified that on February 14, 1994, S.H. came running home and had fear in her eyes. Within ten to fifteen minutes, S.H.’s mother went to confront Harper at his trailer, but he was gone. This was the same day the last instance of abuse occurred. The timing of this instance of abuse was corroborated by Debra’s testimony. Debra stated that on February 14, 1994, she, Harper, and S.H. went out to eat. According to Debra, Harper “kept touching [S.H.] and he kept propositioning her for oral sex and she kept telling him no. He just kept on and she finally — I guess she did.... ” After arriving back at the trailer park, Debra told S.H. to go home and tell her mother what had happened. Debra then told Har *1161 per she had told S.H. to tell her mother. Harper beat Debra, and the two of them fled to Arkansas. Regardless of the trial court’s reason for overruling the objection, “[a]n appellate court may affirm a trial cqurt if the correct result is reached, even if the trial court reached the result for the wrong reasons.” Methodist Hosp. of Hattiesburg, Inc. v. Richardson, 909 So.2d 1066, 1070 (¶ 7) (Miss.2005) (citing Puckett v. Stuckey, 63B So.2d 978, 980 (Miss.1993)).
¶ 22. Even if S.H.’s mother’s testimony was not excepted from hearsay as a present sense impression, we cannot find the admission of this testimony was reversible error. In addition to S.H.’s mother’s testimony, there was sufficient evidence to find Harper guilty beyond a reasonable doubt. The same applies to C.H.’s mother’s testimony. S.H. testified Harper fondled her, made her put her mouth on his penis, put his fingers in her vagina, and pulled down her pants and attempted to insert his penis inside of her. C.H. testified Harper touched and licked her vagina and chest, rubbed his penis on her, and made her put her mouth on his penis. Debra testified she witnessed Harper licking C.H.’s vagina and touching C.H.’s chest while his penis was exposed. Debra testified Harper made C.H. touch his penis. She stated this occurred almost on a daily basis. As for S.H., Debra testified Harper would grab S.H.’s chest and touch her vaginal area. Dorothy also testified that she saw Harper grab S.H.’s chest on approximately four occasions. Dorothy also saw Harper with his hand in C.H.’s pants while C.H. was crying. Harper testified and denied any abuse occurred.
¶ 23. We find the weight of the evidence against Harper was sufficient to outweigh any harm done by allowing the hearsay testimony. Although Harper’s testimony contradicted the other witnesses, it is well settled that “[i]t is the jury who determines the weight of the testimony and the credibility of the witnesses at trial....” Teasley v. Buford, 876 So.2d 1070, 1075 (¶8) (Miss.Ct.App.2004) (citation omitted). This issue is without merit.
III. TESTIMONY OF CO-INDICT-EE’S GUILT
¶ 24. During direct examination by the State, Debra admitted she engaged in inappropriate sexual acts with C.H. and S.H. Debra testified she was forced by Harper to watch and to engage in these sexual acts. Debra testified she was indicted for her actions, entered a plea of guilty, and spent time in jail. Although no objection was made, Harper argues plain error occurred when his wife revealed to the jury that she had pleaded guilty.
¶ 25. A co-defendant’s guilty plea or conviction is generally inadmissible “because such plea of guilty or conviction is no evidence of the guilt of the party being tried.” Buckley v. State, 223 So.2d 524, 528 (Miss.1969). However, further analysis is required to determine if plain error occurred. “[A] party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred.” Parker v. State, 30 So.3d 1222, 1227 (¶ 14) (Miss.2010). The plain-error doctrine permits the appellate court to review an “obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s ‘fundamental, substantive right.’” Smith v. State, 986 So.2d 290, 294 (¶ 10) (Miss.2008).
¶ 26. We cannot find Debra’s statement was plain error. Debra testified at trial and was available to be cross-examined on her guilty plea. This Court has suggested that a defendant’s opportunity to question a co-indictee regarding his or her guilty *1162 plea weighs against a finding of error regarding the admission of evidence regarding those same guilty pleas. Palm v. State, 724 So.2d 424, 426 (¶ 4) (Miss.Ct.App.1998). In White v. State, 616 So.2d 304, 308 (Miss.1993), the Mississippi Supreme Court found no reversible error where a co-indictee testified about his involvement in the crime and evidence of the same co-indictee’s guilty plea was introduced at trial. Further, Debra pleaded guilty rather than being found guilty by a jury. Evidence of a guilty plea does not carry the same danger of prejudice as evidence of a jury verdict of guilt. Clemons v. State, 732 So.2d 883, 890 (¶ 29) (Miss.1999).
¶ 27. This issue is procedurally barred. And because we find no error which affects Harper’s fundamental or substantive rights or which causes a manifest miscarriage of injustice, this issue is without merit under the plain-error doctrine.
IV. MOTION FOR A NEW TRIAL
¶28. After Harper was found guilty, a hearing was held on his post-trial motions for a JNOV and new trial. During the hearing, Harper’s counsel told the trial court he had obtained newly-discovered evidence that C.H. had perjured herself at an unrelated sexual-abuse trial in Lafayette County, Mississippi. C.H. was subpoenaed to testify at the hearing.
¶ 29. Approximately a month before Harper’s trial, C.H. testified as a witness in an unrelated trial for a friend. At the trial, C.H. admitted when she was approximately fifteen years old, she accused her mother’s boyfriend of sexual abuse. At the hearing in the case against Harper, she testified she later went to police and recanted the allegation against her mother’s boyfriend because it was not true. However, C.H. testified she only recanted the accusation at the insistence of her mother. She testified at Harper’s hearing that she lied in Lafayette County because her mother was still living with the boyfriend at the time. At the conclusion of the hearing, the trial court overruled the motion for a new trial, finding C.H.’s testimony in Lafayette County did not affect her credibility at the trial against Harper.
¶ 30. The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court. Witherspoon v. State, 767 So.2d 1065,1067 (¶ 7) (Miss.Ct.App.2000) (citing Williams v. State, 669 So.2d 44, 55 (Miss.1996)). A motion for a new trial based on newly discovered evidence should be granted where: “(1) the evidence will probably produce a different result or verdict; (2) the evidence has been discovered since trial and could not have been discovered before trial by the exercise of due diligence; (3) it is material to the issue; and (4) it is not merely cumulative or impeaching.” Bridgeman v. State, 58 So.3d 1208, 1216 (¶ 40) (Miss.Ct.App.2010) (citing Ormond v. State, 599 So.2d 951, 962 (Miss.1992)).
¶ 31. We find Harper has failed to show C.H.’s testimony in Lafayette County would have likely produced a different result or verdict in his trial. As the trial court pointed out, C.H. was three years old when Harper abused her, and the other alleged abuse occurred when she was fifteen. There was no evidence C.H. had a pattern of making false allegations of abuse from the time she was three years old. Further, there was an overwhelming amount of testimony against Harper. Thus, it is unlikely a different verdict would have been reached if the jury would have learned of C.H.’s prior testimony, which was unrelated to any testimony against Harper. This issue is without merit.
*1163 V. CUMULATIVE ERROR
¶ 32. Finally, Harper argues cumulative errors during the trial necessitate reversal. Having found no reversible error as to the issues raised, we find no cumulative errors that necessitate reversal.
¶ 33. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I, III, IV, V, XI, AND XII, SEXUAL BATTERY; COUNTS II AND VIII, FONDLING; COUNT VI, ATTEMPT TO COMMIT SEXUAL BATTERY; COUNT VII, CONSPIRACY TO COMMIT SEXUAL BATTERY; AND SENTENCE OF FIVE YEARS EACH ON COUNTS I, II, IV, V, VI, VII, VIII, AND XII; TWENTY YEARS EACH ON COUNTS III AND XI; WITH THE SENTENCES IN COUNTS I, II, IV, V, VI, AND XI TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT III; WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT III; WITH THE SENTENCES IN COUNTS VII AND VIII TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT XII; AND THE SENTENCE IN COUNT XII TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT XI, FOR A TOTAL OF FIFTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY FAIR, J.; ISHEE, J., JOINS IN PART.

. This Court declines to identify minor victims of sexual abuse.