MAXWELL, JUSTICE, SPECIALLY CONCURRING:
 

 ¶30. The majority is correct that there is no reversible error. But I write separately to address the propriety of both the State and the defendant probing potential jurors about their
 
 biases
 
 and preconceived views of accomplice guilty pleas. I suggest such inquiries are within the trial judge's discretion when an accomplice has pled guilty and is expected to testify.
 
 [3]
 

 ¶31. It is obvious to our bench and bar that criminal practice has changed tremendously in recent years. Gone are the days of demurrers and slews of much simpler one count, one defendant indictments. Multi-defendant, multi-count prosecutions-where defendants, through plea agreements, become accomplice witnesses-now comprise much of our criminal dockets. And unfortunately, until today, this Court has had very little opportunity to specifically discuss in any great depth whether parties may inquire into potential jurors' biases for or against these types of witnesses who have accepted plea bargains.
 

 ¶32. Without question, voir dire is the appropriate procedural stage for the parties to test whether prospective jurors are challengeable for cause. And one immediate and obvious cause for removal is
 
 bias
 
 . "Trial judges must scrupulously guard the impartiality of the jury and take corrective measures to insure an unbiased jury."
 
 Scott v. Ball
 
 ,
 
 595 So.2d 848
 
 , 850 (Miss. 1992) (citations omitted). Indeed, a "circuit judge has an absolute duty ... to see that the jury selected to try any case is fair, impartial and competent."
 

 Id.
 

 (citing Miss. Const. art. 3, § 26 ;
 
 King v. State
 
 ,
 
 421 So.2d 1009
 
 , 1016 (Miss. 1982) ).
 

 ¶33. Jurors bring with them a variety of life experiences and preconceived notions when they enter a courtroom. Individual views about self-interest, favorable treatment, leverage, motivation, and credibility run the gamut in cases involving accomplice testimony. Some potential jurors harbor very negative and hardened views of the veracity of a codefendant who cuts a plea deal and then shows up repackaged as a State witness. They may see the witness as a "snitch" not to be trusted. Other venire members cling to a completely opposite preconceived idea-that because an accomplice has already admitted guilt, the accused defendant must be guilty too.
 

 ¶34. Here, the State probed the venire about their views of the accomplice guilty pleas. This resulted in the later scenario presenting itself-the judge removing a biased juror for cause. And I agree with the majority that there was no reversible error in this process.
 

 ¶35. With that said, I am quite aware and respectful of our longstanding precedent that evidence of an accomplice's guilty plea or conviction is not competent substantive evidence to prove the remaining defendant's guilt by association.
 
 [4]
 
 Indeed, it is never admissible for that purpose. To be clear, I am not suggesting we overrule this hornbook premise. But that is not what this case is about.
 

 ¶36. Here, the State did not hold out the accomplices' guilty pleas as substantive evidence that Sharkey was guilty simply because he associated with them. Instead, the State questioned potential jurors about their preconceived views and biases about accomplice guilty pleas. Our evidentiary rules certainly authorize ferreting out bias and self-interest at trial.
 
 [5]
 
 And this court has sanctioned inquiry into possible promises of leniency and the disposition of criminal charges pending against state witnesses, noting these are proper areas for
 questioning.
 
 Hall v. State
 
 ,
 
 476 So.2d 26
 
 (Miss. 1985) (holding defendant was entitled to question witness to determine if possible motives or promises exist);
 
 Fuselier v. State
 
 ,
 
 468 So.2d 45
 
 , 50-52 (Miss. 1985) (holding defendant was entitled to show jury evidence of agreement where such would tend to impeach or show bias in witness testimony). While we have never addressed the pointed question of probing jurors about accomplice guilty pleas, other jurisdictions routinely permit the practice.
 
 [6]
 
 Perhaps the Kentucky Supreme Court put it best:
 

 It has long been the rule in this Commonwealth that it is improper to show that a co-indictee has already been convicted under the indictment. However, ... [the rule] bars only the "blatant use of the conviction of a co-indictee as substantive evidence of guilt of the indictee now on trial." ... [To the contrary], a statement posed during voir dire is not substantive evidence. Secondly, it is quite routine practice for the Commonwealth to question prospective jurors about whether previous charges or convictions of its witnesses and/or deals made with them by the Commonwealth will prohibit the jurors from giving such witnesses a fair hearing.
 

 Mayse v. Commonwealth
 
 ,
 
 422 S.W.3d 223
 
 , 226 (Ky. 2013) (internal citations and quotations omitted).
 

 ¶37. Furthermore, while I have the utmost respect for my dissenting colleague, I strongly disagree with the dissent's assertion that the mere mention of an accomplice's guilty plea always amounts to reversible error-unless the defendant desires to bring it up. Such a view misses the intent of the original rule, is one sided, and is not the law in Mississippi. And I have not found a single American court that shares this notion in cases like this, where the plea agreement is not being offered as substantive evidence.
 

 ¶38. We must keep in mind that the original prohibition against mention of accomplice
 guilty pleas was aimed to curb a sharp practice that is not at issue here-the State offering an accomplice's confession,
 
 [7]
 
 guilty plea,
 
 [8]
 
 or evidence that the accomplice had been convicted by a prior jury
 
 [9]
 
 as substantive evidence of the remaining defendant's guilt.
 

 ¶39. Instead of recognizing this distinction, the dissent brushes with broad strokes, stretching the original protection beyond its intended purpose. In doing so, it places heavy emphasis on
 
 Ivy
 
 ,
 
 Johns
 
 , and similar cases like
 
 McCray v. State
 
 , in which this Court's "primary concern [was] with the consequences" of a deputy circuit clerk being called as a witness to introduce "a certified copy of the co-indictee's conviction and sentence" as
 
 substantive evidence
 
 of the remaining defendant's guilt.
 
 McCray v. State
 
 ,
 
 293 So.2d 807
 
 , 807-08 (Miss. 1974). It is also quite a leap for the dissent to claim that
 
 McCray
 
 and
 
 Ivy
 
 noted that "defendants have a 'constitutional right' that protects them from having the guilt of their co-indictee made known." Dis. ¶ 64. Neither of those cases say that. Rather, what was violative of the defendant's rights to a "fair trial" in
 
 McCray
 
 and
 
 Ivy
 
 was the State's use of an accomplice's guilty plea and another jury's guilty verdict as substantive evidence of the defendants' guilt.
 
 See
 

 McCray
 
 ,
 
 293 So.2d at
 
 808-09 ;
 
 Ivy
 
 , 301 So.2d at 293. Once more, that is not what happened here and is not what this case is about.
 

 ¶40. Another pertinent truth that the dissent misses is that in recent years our Court has consistently refused to reverse where accomplice guilty pleas were broached-even by the State-for purposes other than substantive evidence. On balance, I find that
 
 stare decisis
 
 requires this Court to also recognize these more recent precedents-several of which expressly distinguish the very cases the dissent relies on and illustrate that the dissent's narrative is overly broad and incorrect.
 

 ¶41. For example, in
 
 White v. State
 
 -a post-rules-of-evidence case, in which the State informed the venire "that White's accomplices had earlier pled guilty to the burglary at issue"-this Court found no reversible error in mentioning the guilty pleas to the venire or in the later testimony about them.
 
 White v. State
 
 ,
 
 616 So.2d 304
 
 , 305 (Miss. 1993). Justice Banks, writing for the unanimous Court in
 
 White
 
 , coined the disclosure of the codefendants' guilty plea testimony as "essentially an evidentiary issue."
 

 Id.
 

 at 307
 
 . This Court did not treat it as a constitutional violation or view it as the death knell that the dissent suggests. Rather, quite to the contrary, our Court openly acknowledged that "[f]ederal and state appellate courts have found the admission of a co-conspirator's plea of guilty, while incompetent as substantive evidence of the defendant's guilt, may be admissible for other purposes."
 

 Id.
 

 (citing
 
 United States v. Medley
 
 ,
 
 913 F.2d 1248
 
 , 1257-58 (7th Cir. 1990) ;
 
 United States v. Davis
 
 ,
 
 766 F.2d 1452
 
 , 1456 (10th Cir. 1985) ;
 
 United States v. Wiesle
 
 ,
 
 542 F.2d 61
 
 , 62-63 (8th Cir. 1976) ;
 
 People v. Brunner
 
 ,
 
 797 P.2d 788
 
 , 789 (Colo. Ct. App. 1990) ;
 
 State v. Padgett
 
 ,
 
 410 N.W.2d 143
 
 , 146 (N.D. 1987) );
 
 State v. Braxter
 
 ,
 
 568 A.2d 311
 
 , 316 (R.I. 1990) ). As support for this pronouncement, the Court in
 
 White
 
 pointed to several cases illustrating that an accomplice's guilty plea, though inadmissible to prove a defendant's guilt, could be properly offered for impeachment purposes.
 

 Id.
 

 (citing
 
 State v. Braxter
 
 ,
 
 568 A.2d 311
 
 , 316 (R.I. 1990) (guilty plea of accomplice in trial of defendant on same charge admissible when introduced to impeach accomplice, but inadmissible to demonstrate guilt of defendant);
 
 State v. Rothwell
 
 ,
 
 308 N.C. 782
 
 ,
 
 303 S.E.2d 798
 
 , 800-01 (1983) (guilty plea of co-conspirator admissible when admitted for "legitimate purpose" but never as evidence of defendant's guilt);
 
 Greer v. State
 
 ,
 
 188 Ga. App. 808
 
 ,
 
 374 S.E.2d 337
 
 , 338 (1988) (no error for admission of accomplice's guilty plea to same crime for which defendant is charged where the plea was introduced during the accomplice's testimony and the accomplice was subject to cross-examination by defendant) ).
 

 ¶42. Among those permissible purposes mentioned in
 
 White
 
 was that a guilty plea may also be a prior consistent statement with the testimony that the accomplice gives at the trial of his codefendant.
 
 [10]
 

 White
 
 ,
 
 616 So.2d at 307-08
 
 . And in recent years, this Court has continued to recognize as much, consistently refusing to reverse cases just because a testifying accomplice has been questioned about or mentioned his or her earlier guilty plea.
 
 See
 

 Hathorne v. State
 
 ,
 
 759 So.2d 1127
 
 , 1132 (Miss. 1999) (finding no reversible error where testifying accomplice mentioned earlier guilty plea, because such was evidence of a prior consistent statement, admissible under Miss. R. Evid. 801(d)(1) );
 
 Clemons v. State
 
 ,
 
 733 So.2d 266
 
 , 271 (Miss. 1999) ;
 
 Henderson v. State
 
 ,
 
 732 So.2d 211
 
 , 215 (Miss. 1999).
 

 ¶43. In fact, in
 
 Wallace v. State
 
 , this Court expressly distinguished the State impeaching a codefendant turned witness with his guilty plea from the tactics used in
 
 Ivy
 
 ,
 
 McCray
 
 ,
 
 Buckley
 
 , and
 
 Pieper
 

 [11]
 
 -all relied upon by the dissent-because in those cases, "the purpose of the co-indictee's testimony was for substantive evidence and to bolster the testimony of the co-indictee."
 
 Wallace v. State
 
 ,
 
 466 So.2d 900
 
 , 905 (Miss. 1985). And in
 
 Wallace
 
 , the plea agreement was used by the State "for the purpose of impeachment and attacking the credibility of the witness ...."
 

 Id
 

 .
 

 at 906
 
 .
 

 ¶44. I mention these cases because a balanced analysis requires an understanding and acknowledgment of why this Court originally prohibited the mention of guilty pleas, while also recognizing this Court's more recent and relevant pronouncements, which are more in line with today's widespread handling of accomplice guilty pleas.
 

 ¶45. Credibility issues are always front and center in cases built on accomplice testimony. And there is no rational reason why either the State or defendant should be hamstrung from addressing early on the inherent biases that are always afoot on jury panels about guilty pleas of accomplices expected to testify. Mention of such
 plea agreements could be made as early as voir dire or opening, addressed through vigorous impeachment by the defendant when cross examining an accomplice, or brought up preemptively by the State to blunt credibility attacks.
 
 [12]
 
 Any mention could certainly be accompanied by a limiting instruction crafted to caution the jury accordingly.
 
 [13]
 

 ¶46. Contrary to the dissent's assertion, the pendulum obviously swings both ways on this issue. As the Missouri Court of Appeals has noted:
 

 Such
 
 voir dire
 
 questions are allowed as being relevant because, any time the State enters into a plea agreement with a witness, the issues of bias and self interest arise, since plea agreements are "double-edged swords," that not only support a witness'[s] credibility by showing an interest to testify truthfully, but also impeach a witness'[s] credibility by showing an interest in testifying favorably for the government, regardless of the truth.
 

 State v. Dudley
 
 ,
 
 51 S.W.3d 44
 
 , 54-55 (Mo. Ct. App. 2001) (internal citations and quotations omitted). And one thing is certain, at least as far as voir dire is concerned. If this Court were to accept the dissent's view and find reversible error or grounds for a mistrial with any mention of an accomplice's guilty plea during voir dire, neither the State nor the defendant will ever uncover the lurking biases and preconceived notions about a question undoubtedly on the jurors' minds-an issue which history has shown will at some point in trial rear its head.
 

 RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.
 

 I have previously explained that there is "nothing improper about the State or a defendant bringing up a co-conspirator's plea agreement during opening statement, so long as the reasons serve
 
 a proper evidentiary purpose, such as suggesting bias
 
 [.]"
 
 Harper v. State
 
 ,
 
 102 So.3d 1154
 
 , 1163-64 (Miss. Ct. App. 2012) (Maxwell, J., specially concurring) (emphasis added). Though
 
 Harper
 
 dealt with mentioning an accomplice's guilty plea during the State's opening, I suggested that "generally both sides are entitled to address accomplice plea agreements even as early as voir dire to probe for potential juror prejudice or bias[.]"
 

 Id.
 

 at 1164
 
 .
 

 See
 

 Buckley v. State
 
 ,
 
 223 So.2d 524
 
 , 528 (Miss. 1969) ("[W]here two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried.")
 

 See
 
 Miss. R. Evid. 616 ("Evidence of a witness's bias, prejudice, or interest-for or against any party-is admissible to attack the witness's credibility.").
 

 See
 

 State v. Baumann
 
 ,
 
 125 Ariz. 404
 
 ,
 
 610 P.2d 38
 
 , 43 (1980) (finding no abuse of discretion in the trial court's asking prospective jurors' about their "ability to judge the testimony of a witness indicted in a related cause number and who, as part of a plea bargain, agreed to testify at appellant's trial," because "[t]he purpose of voir dire examination is to determine whether prospective jurors can fairly and impartially decide the case at bar and the scope of such examination is within the sound discretion of the trial judge");
 
 State v. Smith
 
 ,
 
 46 Conn.App. 600
 
 ,
 
 700 A.2d 91
 
 , 93-94 (1997) (holding it was proper for both the state and defendant to question potential jurors about their objectivity in assessing the credibility of prosecution witnesses who were testifying in exchange for the state's agreement to
 
 nolle pros
 
 certain drug charges);
 
 Evans v. State
 
 ,
 
 808 So.2d 92
 
 , 106 (Fla. 2001) (holding that, in a case that strongly relied on the State's witness who had entered a plea bargain, "it was proper for the State to inquire into whether any of the potential jurors would harbor any biases against a witness who had accepted a plea bargain");
 
 Hopkins v. State
 
 ,
 
 429 N.E.2d 631
 
 , 635 (Ind. 1981) ("see[ing] nothing wrong in inquiring into jurors' minds about their biases in regard to the credibility of witnesses with an eye toward removing prospective jurors predisposed to disbelieve those with certain characteristics, such as plea bargainers");
 
 State v. Dudley
 
 ,
 
 51 S.W.3d 44
 
 , 54 (Mo. Ct. App. 2001) ("In voir dire, the State is entitled to elicit from prospective jurors any preconceived notions that they might have concerning the law and to ask specifically whether they would refuse to consider the testimony of State witnesses with the benefit of a plea agreement.");
 
 State v. McCray
 
 ,
 
 91 N.E.3d 288
 
 , 297 (Ohio Ct. App. 2017) (quoting
 
 State v. Lundgren
 
 ,
 
 73 Ohio St.3d 474
 
 ,
 
 653 N.E.2d 304
 
 , 317 (1995) ) (holding that a prosecutor may not only validly explore the possibility that prospective jurors might be predisposed to discount the testimony of inmate witnesses but also may to try to " 'draw the sting' from the unfavorable fact that [some of] the state witnesses were accomplices and had plea-bargained to minimize their criminal exposure").
 

 West v. State
 
 ,
 
 169 So. 770
 
 (Miss. 1936) (holding that a copy of accomplice's post-trial confession implicating defendant was incompetent substantive evidence of defendant's guilt).
 

 State v. Thornhill
 
 ,
 
 251 Miss. 718
 
 , 721, 726-27,
 
 171 So.2d 308
 
 , 312 (1965) (holding that the record of conviction of two co-defendants who had entered guilty pleas but were not called as witnesses was incompetent evidence of remaining defendant's guilt).
 

 Ivy v. State
 
 ,
 
 301 So.2d 292
 
 (Miss. 1974) (holding that evidence that witness had been tried by a jury and found guilty of the same crime for which the defendant was being tried was not competent evidence of remaining defendant's guilt).
 
 See also
 

 Johns v. State
 
 ,
 
 592 So.2d 86
 
 (Miss. 1991) ;
 
 Henderson v. State
 
 ,
 
 403 So.2d 139
 
 (Miss. 1981) ;
 
 Griffin v. State
 
 ,
 
 293 So.2d 810
 
 , 812-13 (Miss. 1974).
 

 Specifically, the Court noted that "a plea of guilty ... is[ ] a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals."
 
 White
 
 ,
 
 616 So.2d at 307
 
 .
 

 Pieper v. State
 
 ,
 
 242 Miss. 49
 
 ,
 
 134 So.2d 157
 
 (1961).
 

 The Fifth Circuit has held that, where a co-defendant testifies at trial and is "subject to the rigors of cross-examination," the government's "disclosure of the guilty plea to blunt the impact of attacks on [the co-defendant's] credibility serves a legitimate purpose and is permissible."
 
 United States v. Veltre
 
 ,
 
 591 F.2d 347
 
 , 349 (5th Cir. 1979) (citing
 
 United States v. King
 
 ,
 
 505 F.2d 602
 
 , 607 (5th Cir. 1974) ). And in that same vein, criminal defendants are entitled-from the get-go-to disclose a co-defendant's guilty plea to plant the seeds of doubt in the jury's mind, which might discredit a testifying co-defendant.
 

 According to the Fifth Circuit, "[a] witness-accomplice guilty plea may be admitted into evidence if it serves a legitimate purpose and a proper limiting instruction is given."
 
 United States v. Marroquin
 
 ,
 
 885 F.2d 1240
 
 , 1247 (5th Cir. 1989). Potential prejudice may be reduced by instructing the jury that "the fact that an accomplice has entered a plea of guilty to an offense charged is not evidence, in and of itself, of the guilt of any other person" and that such testimony should be "received with caution and weighed with great care."
 
 United States v. Valuck
 
 ,
 
 286 F.3d 221
 
 , 228 (5th Cir. 2002).