McGuire *v.* State

No. 40496          May 27, 1957          95 So. 2d 537

*John B. Gee,* Vicksburg, for appellant.

*G. Garland Lyell, Jr., Asst. Atty. Gen.*, Jackson, for appellee.

GILLESPIE, J.

Appellant was indicted, tried, and convicted of the crime of attempted kidnapping. The trial court imposed the maximum sentence of ten years.

Omitting the formal parts and the overt acts set out therein, the indictment charged that appellant, ". . . in and upon one Lida Diane Speyerer, a human being, a child under the age of ten (10) years, and approximately nine (9) years of age, wilfully, unlawfully, feloniously and forcibly did make an assault, and her, the said Lida Diane Speyerer aforesaid, then and there wilfully, unlawfully, feloniously and forcibly lay hold of and without lawful authority therefor, wilfully, unlawfully, feloniously and forcibly attempt, design and endeavor to seize and

confine and kidnap, without her consent and against her will, . . . . with the wilful, unlawful and felonious intent, and then and there in the attempt, design and endeavor of him, the said Harry McGuire, alias Red McGuire aforesaid, to then and there wilfully, unlawfully, feloniously and forcibly cause her, the said Lida Diane Speyerer aforesaid, to be deprived of her liberty, but he, the said Harry McGuire, alias Red McGuire aforesaid, was then and there intercepted and failed in the commission thereof.''

The statutes under which appellant was indicted are Sections 2017 (attempt to commit an offense) and 2237, Mississippi Code of 1942. The latter statute, which defines and denounces kidnapping, is as follows:

''Every person who shall, without lawful authority, forcibly seize and confine any other, or shall inveigle or kidnap any other with intent to cause such person to be secretly confined or imprisoned in the state against his will, or to cause such other person to be sent out of this state against his will, or to cause such other person to be deprived of his liberty, or in any way held to service against his will, shall upon conviction, be punished by imprisonment in the penitentiary not exceeding ten years; and upon the trial of any such offense the consent of the person so kidnapped or confined shall not be a defense, unless it appear that such consent was not extorted by threats or duress.''

A demurrer to the indictment was overruled and appellant says this was error. The indictment in this case is almost identical with the one approved by this Court in the case of Bevel v. State, 213 Miss. 208, 56 So. 2d 500, except that in the Bevel case the completed offense of kidnapping was charged, and in the present case an attempt is charged. We hold that there was no error in overruling the demurrer.

The proof is entirely without dispute. Appellant offered no testimony.

Lida Diane Speyerer, a female child nine years of age, lived with her parents in Vicksburg. Both parents were working on the day of the alleged crime, the father at his place of business and the mother at a beauty shop. Lida did not know appellant although they were first cousins, once removed. At about three o'clock in the afternoon, Lida left her home to go to the beauty shop where her mother was working. The beauty shop is located in the business section of Vicksburg. When she passed the Mercy Hospital, appellant was coming out of the hospital and he told Lida, "my sister is sick, would you show me where the Hotel Vicksburg is?" Before Lida could answer, appellant asked Lida what a certain building was, and she told him. She told appellant she had an appointment at the beauty shop and had to go. Appellant then asked Lida to show him where the nurses' home was, and Lida testified that she thought appellant was going to hit her with some kind of light he had in his hand. Lida was nervous as this conversation took place and appellant had his hand on Lida's shoulder. Appellant turned Lida around and both went to the corner of South Street and then turned and went to the Post Herald. Appellant told Lida he would give her $5.00 to get ice cream if she would show him where the nurses' home was. When near the Post Herald, appellant pointed out a house and said it was his and that he had some gifts and if she would go with him he would give her one, at that time having his hands on her shoulder. The nervous action of the child when she was first approached at the Mercy Hospital attracted the attention of two ladies who had just left the hospital, both of whom testified, and who followed appellant and Lida, after they left Mercy Hospital, to see what was going to happen. Lida kept looking back as she and appellant went towards the Post Herald. Appellant was also looking back from time to time. When they started to cross the street at the Post Herald, appellant looked the other way and

Lida broke away from appellant and started trotting or walking fast back to the corner at South Street, the way she had come, and turned toward Mercy Hospital. The two ladies were still following. When Lida got to the corner of Monroe and Crawford, appellant, who had reached that point by going around another way, was right behind Lida as she crossed the street. When the two ladies last saw them, appellant and Lida were going down the hill towards where Lida's mother worked. Appellant was behind Lida and they were walking very fast.

After Lida left appellant at the Post Herald, and as she passed an alley after appellant had gone around another way, appellant again approached Lida and said, ''don't run from me, your mother told me to take care of you.'' Lida's mother had not done so. After going down the hill, Lida went into an alley to reach the back door of the beauty shop where her mother worked. She started crying. Appellant said, ''come on go with me.'' Lida said, ''I don't want to,'' and appellant said, ''well, you're going to.'' Lida knocked on the beauty shop door and someone let her in and appellant left.

When Lida got into the beauty shop she made complaint to her mother, who called the police as soon as she saw the child was all right. When her mother saw her, Lida was sweating, her hair was mussed up, and she was trembling. Her mother thought at first she had suffered an automobile accident.

Appellant complains of one of the state's instructions, but we do not think there was reversible error. The instruction told the jury in substance that if they believed beyond a reasonable doubt that defendant did what was charged in the indictment, using substantially the same words contained in the indictment, that they should find him guilty. Appellant also complains of three instructions requested by him and refused by the court. One was a peremptory, later to be considered, and the other two directed the jury that appellant could not be found

guilty of a greater crime than simple assault or assault and battery. There was no error in refusing these instructions.

At the close of the state's case, appellant moved to exclude the evidence and acquit him. He also requested and was refused a peremptory instruction. Since appellant offered no proof, the motion and the refused peremptory instruction present the same question.

Appellant says that the alleged crime took place in the middle of a city and that there is no proof that appellant intended to commit the crime of kidnapping; that there is no proof that appellant did an overt act to seize and confine the child or deprive her of her liberty. He contends in effect that resort must be had to speculation to arrive at the intent to commit the crime. This question has given us concern, and the case has received the most careful scrutiny.

■■■ The proof conclusively shows that appellant did commit overt acts in an effort to have the child go with him to his home or some other place. The question narrows to whether appellant intended to kidnap the child within the meaning of the statute. His ultimate motive in confining or depriving her of her liberty is immaterial. 51 C. J. S., Kidnapping, Sec. 1, p. 433. (Hn 3) It is undisputed that appellant used some force and a great deal of persuasion and manuevering to get the child to go with him, and persisted in his efforts to the extent of taking her about two blocks in one direction away from where she wanted to go, and then, when she got away from him, he pursued her until she got to the door of the beauty shop where her mother worked. Appellant made an effort to get her to go where he had no authority to take her and where the child did not want to go, and where she would be beyond the control of her parents. What appellant intended to do with or to the child if he had succeeded in taking her to his home, or wherever he

intended to take her, may be a matter for speculation. The statute does not require such purpose or motive to be proven. But there can be no reasonable doubt that he did intend to kidnap her within the meaning of the statute. If appellant had succeeded in what he was attempting to accomplish, the child would have been deprived of her liberty and confined without lawful authority. We are of the opinion that the evidence was sufficient to sustain the charge.

Affirmed.

All Justices concur, except *McGehee, C. J.*, and *Kyle, J.*, who took no part.