839 So.2d 535 (2002)
Stoney Frank STEWART, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00813-COA.
Court of Appeals of Mississippi.
August 20, 2002.
Rehearing Denied November 19, 2002.
Certiorari Denied March 6, 2003.
*536 James A. Williams, Meridian, attorney for appellant.
Office of the Attorney General by: John R. Henry, Jr., attorney for appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Stoney Frank Stewart was convicted after a jury trial of one count of burglary of a church. On appeal, Stewart alleges that certain instructions were defective, that witnesses were unfairly allowed to imply that he had previously been in trouble with law enforcement authorities, that hearsay about theft of cash at the church should not have been introduced, and that he received ineffective assistance of counsel. We find no error and affirm.

STATEMENT OF FACTS
¶ 2. On the afternoon of August 2, 1999, the Reverend David Chambers arrived at the Briarwood Baptist Church located just outside of Meridian, Mississippi. Chambers made certain that all outside doors except for one were locked. The south door was left closed but unlocked in order that anyone who might want to meet with him could enter. The minister walked through the church and found nothing *537 amiss. He then went to use the restroom. While there he heard a noise coming from the women's restroom. Soon thereafter he heard another noise from the direction of the secretary's office. He then went to investigate.
¶ 3. As he walked down the hall, Chambers noticed that a plexiglass window in the door to the secretary's office had been broken out. The lights in the office were lit. In the office, Chambers discovered a man who identified himself as Stoney Frank Stewart. Stewart was standing between the door and the secretary's desk. The mini-blinds in the office were askew.
¶ 4. Stewart told the minister that it appeared someone had broken into the office. Stewart explained that, while on his way to receive an eye examination in a nearby town, he had gone into the church to use the restroom. Stewart was from Mobile, Alabama. Chambers noted that Stewart was sweating profusely. While continuing to speak with Stewart, Chambers called the Lauderdale County Sheriff's Department.
¶ 5. Stewart then went to his car. Chambers accompanied him. Chambers asked Stewart how he entered the church, and Stewart replied that he had entered through the north door. Stewart's vehicle, a dark green Jeep Cherokee, was parked near the church's north entrance. Before Stewart drove away, the minister noted his vehicle's tag number.
¶ 6. The Reverend Chambers examined the north door of the church, which he was certain had previously been locked. He found that the door jamb was pushed out slightly. The door also had scratches in the wood and latch. Chambers quickly surveyed the secretary's office and did not discover anything missing. The church secretary later reported to Chambers that a twenty dollar bill was missing, but the church secretary did not testify.
¶ 7. The day after the breaking and entering, it was discovered that a set of keys was missing. Included were keys to several offices and the church's drink vending machine. Chambers remembered at one time seeing the keys on the secretary's desk but also remembered that the keys were not on the desk the day after the break-in.
¶ 8. A sheriff's deputy, Kenneth Graham, inspected the church premises. When he examined the north door, he found it to be unlocked and the locking mechanism to have "odd scratches." Graham concluded that the scratches were not consistent with normal opening and closing but were consistent with a door being pried open. No usable fingerprints were found.
¶ 9. Using the tag number recorded by the minister on the day of the incident, Stewart was traced to his home in Mobile. There he was arrested and later extradited to Mississippi. After a two-day trial, Stewart was convicted of burglary of a church. Because he was an habitual offender, Stewart was sentenced to fourteen years with no possibility of early release. Stewart acquired new counsel for the purpose of prosecuting this appeal.

DISCUSSION
1. Indictment and Jury Instruction
¶ 10. Stewart alleges that he was indicted for the crime of burglary of a building other than a dwelling, but that the jury instructions did not conform. The indictment alleged that Stewart
on or about the 2nd day of August, A.D., 1999, did then and there unlawfully, feloniously, and burglariously break into and enter the building of Briarwood Baptist Church, wherein valuable things were kept for sale and use; there situated, with the intent to commit the crime *538 of larceny therein and did unlawfully take, steal and carry away the personal property of another, to wit: twenty dollars ($20.00) in good and lawful currency of the United States, and keys to several offices and coke machines, and, if not this greater crime, then the lesser crime of Grand Larceny, by taking the personal property of another....
The indictment reproduces some of the language of the statute dealing with burglary of structures other than a dwelling. That subsection reads as follows:
Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
Miss.Code Ann. § 97-17-33(1)(Rev.2000). This code section has another subpart:
Any person who shall be convicted of breaking and entering a church, synagogue, temple or other established place of worship with intent to commit some crime therein shall be punished by imprisonment in the penitentiary not more than fourteen (14) years.
Miss.Code Ann. § 97-17-33(2)(Rev.2000).
¶ 11. The indictment specified the statute but not the subsection under which Stewart was charged. Stewart argues that because the indictment replicates some significant language from the first subsection, that he was in fact charged with burglary of a building other than a dwelling and not with burglary of a church. To be guilty of burglarizing a church, one need only break and enter a church with intent to commit some crime. Miss.Code Ann. § 97-17-33(2)(Rev.2000).
¶ 12. The indictment alleges that Stewart broke and entered the church building with the intent to commit and did commit the crime of larceny. Though the indictment's language is similar to what is in the first subsection of this statute, there is no ambiguity that he was being charged with breaking and burglarizing the "Briarwood Baptist Church." This indictment was sufficient to provide Stewart "notification in fact of the nature of the charge against him and out of what transaction or occurrence it arose" despite its failure to note a particular subsection. Roberson v. State, 595 So.2d 1310, 1318 (Miss.1992). There is no element of the crime of burglarizing a church that is absent from the indictment, and no realistic ambiguity results.
¶ 13. Stewart next complains of the jury instruction concerning the elements of the offense.
The Court instructs the Jury that, should you find from the evidence in this case, beyond a reasonable doubt that:
1. On or about the 2nd day of August, 1999, in Lauderdale County, Mississippi;
2. The Defendant, Stoney Frank Stewart, did wilfully, unlawfully, and feloniously break and enter the Church Building of Briarwood Baptist Church, with the intent to take, steal, and carry away valuables therein;
then it is your sworn duty to find the Defendant guilty of Burglary of a Church.
*539 ¶ 14. During the instruction conference, the judge asked the prosecutor whether there was a statute dealing with burglary of a building other than a dwelling and with burglary of a church. The prosecutor responded that one code section dealt with both offenses but that the penalty for each offense was different. Stewart's counsel requested that the jury instruction be amended to burglary of a building other than a dwelling, an offense for which the penalty is seven instead of fourteen years. The request was denied.
¶ 15. Two errors with the instruction are alleged here on appeal. The first is that the instruction omitted the language requiring the building to be one "in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation." This language is included in the first subsection of the statute and is an element of that crime. Turner v. State, 721 So.2d 642, 648 (Miss. 1998). It is not included in the second subsection and is not an element of burglary of a church. However, the indictment charged that "valuable things were kept for sale and use" within the Briarwood Baptist Church. No motion to remove that element from the indictment was made.
¶ 16. When an issue of an improper amending of the indictment through instructions is made, the Supreme Court has insisted that this specific issue have first been raised at the trial level. Doss v. State, 709 So.2d 369, 387-88 (Miss. 1996). The only statement that Stewart's trial counsel made regarding this instruction was this: "I would ask that to be amended to burglary other than a dwelling." He did not suggest that an improper constructive amending of the indictment would otherwise occur or that the extra elements needed to be included even though a burglary of a church was charged. That issue was not raised at trial and is thus waived on appeal.
¶ 17. Had the issue been specifically raised, a proper ruling by the court might well have led to the language from the indictment being added to the instruction. There was evidence in support, including that a drink vending machine was in the church and that the keys to it had been stolen. That would support the charge that "valuable things were kept for sale and use" in the church. The value was small, but it would have been sufficient.
¶ 18. The second alleged error is that the jury instruction, by use of the phrase "valuables therein," fails "to have the jury consider whether, as alleged in the indictment, there was a theft of the church keys." Stewart argues that the instruction's failure to include any explicit reference to the keys somehow allowed the jury to consider the alleged theft of twenty dollars, testimony that the jury was ordered by the trial court to disregard. It is presumed that the jury follows the instructions given it by the trial court. McGilberry v. State, 741 So.2d 894, 920 (Miss.1999). We therefore assume that this jury did not consider the missing twenty dollars during its deliberations.
¶ 19. Stewart also argues that the use of the term "valuables therein" allows the jury to assume he was present in the church with the intent to commit larceny. We do not find such an implication arising from the use of this phrase. The Supreme Court has stated that whether the requisite intent to commit a crime is present is "a question of fact to be gleaned by the jury from the facts shown in each case." Shive v. State, 507 So.2d 898, 900 (Miss. 1987). Intent may be proven by the "surrounding circumstances" and "circumstantial evidence." Shive, 507 So.2d at 900.
*540 ¶ 20. Intent was demonstrated by the following. Stewart said that he entered through the north door of the church, a door the minister was certain was locked prior to his finding Stewart in the church office. The window of the church office door was shattered. The blinds in the office were askew. Finally, a set of keys which had been on the desk were later discovered to be missing.
2. Other Jury Instructions
¶ 21. Stewart complains that the jury instructions concerning the presumption of innocence, the definition of breaking and entering, drawing inferences from statements made by the judge, and his right to remain silent were erroneous. We have examined these instructions and find no error. Further, no objection was made by trial counsel to these other instructions. Failure to object to jury instructions at trial bars consideration of present objections to those instructions raised on appeal. Jones v. State, 776 So.2d 643, 653 (Miss.2000).
3. Reference to Other Photos
¶ 22. After Stewart's arrest, the Reverend Chambers was shown a photo line-up. The minister was unable to identify Stewart. Chambers stated that the photographs in the line-up were grainy. Chambers traveled to Choctaw County, Alabama to view photographs at the sheriff's department there. There he identified Stewart from clearer and more recent photographs.
¶ 23. During opening statements, the prosecutor noted that Chambers could not make an identification using the photographs possessed by the Lauderdale County Sheriff's Department. The prosecutor began to refer to photographs in possession of the sheriff's department in Alabama. The exact statement, after noting no identification was made because of the photographs' condition, was this: "At a later time, Deputy Graham found out that the Alabama Sheriff's Department had...." The statement was cut off at this point by an objection from Stewart's counsel. The trial judge sustained the objection and ordered the prosecutor to "rephrase."
¶ 24. Stewart argues here that the "State wilfully injected the issue of identification into the trial ..." by making reference to both the old and newer photographs. Stewart argues that the State misrepresented how he came to be identified so it could refer to these photographs. This misrepresentation allegedly occurred when the State failed to mention in its opening statement that Stewart identified himself to Chambers. The objection here is that the State implied prior bad acts by Stewart, an implication arising from the fact that a sheriff in another state had his photograph. However, an objection was made. The trial judge sustained it. The judge rejected a later request made in chambers for a mistrial based on the same grounds. A trial judge is afforded "considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared." Weeks v. State, 804 So.2d 980, 992 (Miss.2001). There was no abuse of discretion.
4. Hearsay
¶ 25. Deputy Graham testified that twenty dollars was reported to be missing from the secretary's office. An objection was made on the basis of hearsay. The trial judge allowed the testimony on the condition that the State present a witness who had personal knowledge of the money's disappearance. The State failed to do so. Defense counsel moved to strike all testimony concerning the twenty-dollar bill. During the hearing on the *541 motion, the prosecutor explained that he was unaware that his witnesses did not have the requisite personal knowledge. The prosecutor apologized to the court and stated that he had been confident he could prove the point. The trial judge ordered the jury to disregard all testimony regarding the disappearance of the twenty dollars. The trial judge informed the jury that the only alleged theft that they could consider was the theft of the keys.
¶ 26. Stewart argues that the "egregious, repeated references to the $20.00 was purposeful for besmirching [Stoney's] character...." The trial judge effectively cured the error made by the State by ordering the jury to disregard the testimony. Again, it is presumed that a jury follows the instructions given it by the trial court. McGilberry, 741 So.2d at 920. The judge was clear that only the missing keys could be considered; there was sufficient evidence on which to infer that theft.
5. Ineffective Assistance of Counsel
¶ 27. Stewart argues that his trial counsel was ineffective because he struck some jurors and not others, pursued a defense of misidentification instead of seeking an instruction on simple trespass, and moved to strike statements Stewart made to law enforcement during the trial instead of prior to the trial's beginning.
¶ 28. For a successful claim of ineffective assistance, "a defendant must prove (1) that his attorney's overall performance was deficient and (2) that the deficient performance, if any, was so substantial as to prejudice the defendant and deprive him of a fair trial." Gary v. State, 760 So.2d 743, 753 (Miss.2000). There is a strong but rebuttable presumption that the assistance rendered by trial counsel was effective. Gary, 760 So.2d at 753. The presumption may be rebutted if there was a "`reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Id.
¶ 29. Stewart complains that his trial counsel should have removed several jurors. One of those jurors stated that the assistant district attorney was his neighbor whom he saw each morning, noon, and evening. This juror also stated that the assistant district attorney was "a great neighbor" and "[a] former student too." The juror responded that despite his acquaintance with the assistant district attorney, that he could render a verdict of not guilty if he felt it was his duty. Stewart complains that his trial counsel did not remove two jurors who answered that they had relatives who worked for law enforcement in Lauderdale County, but did remove one juror who had a relative working for law enforcement in Clarke County. Also, Stewart claims that his trial counsel should have removed another juror who was affiliated with a Baptist church in the area. Trial counsel did not seek to remove any jurors for cause and used only three peremptory strikes.
¶ 30. Under the assumptions that our review standard require, we find it reasonable that the dynamics of jury selection required counsel to evaluate a variety of facts, not all of which appear in the record. Each of the jurors indicated an ability to be impartial. A trial attorney must sometimes choose from among a number of less than optimal jurors. We find no clear deficiency here.
¶ 31. Another area of complaint is that trial counsel made a motion in the middle of trial to suppress any statements that Stewart may have made to law enforcement. Stewart resided in Mobile, Alabama and was transported to Lauderdale County for trial. The trip by car was approximately three hours in length. *542 Stewart spoke with the officers transporting him concerning this matter, although he had refused to make a specific waiver of his rights against self-incrimination. The gist of this conversation was that Stewart claimed not to have committed any crime but was only in the church to use the restroom. Stewart now argues that these statements should not have been suppressed since they would have been helpful to a claim that he was in the church only to use the restroom. Alternatively, Stewart argued that his trial counsel should have made the motion before trial. Trial counsel was pursuing a defense of misidentification. It is understandable that counsel would not want the jury to hear any admissions by Stewart that he was in the church. The minister's inability to identify Stewart from the initial pictures that he was shown gave some basis for such a defense, even if the intruder did identify himself as Stoney Frank Stewart.
¶ 32. Stewart also argues that his trial counsel damaged his defense when he called to the jury's attention that the tag number recorded by the Reverend Chambers did not match the current tag number on his vehicle. Stewart argues that this allowed the jury to assume he had "switched tags" and encouraging a conclusion that he was of bad character. Again, though, this fits within a defense strategy of mistaken identity. Bringing this tag inconsistency to the jury's attention might strengthen this defense, though certainly other reactions could occur as well.
¶ 33. Stewart argues that because the testimony concerning his presence in the church, and the fact that he identified himself to Chambers could not be rebutted, his trial counsel should not have attempted to utilize a misidentification defense but rather a defense of trespass. "Attorneys are permitted wide latitude in their choice and employment of defense strategy." Hiter v. State, 660 So.2d 961, 965 (Miss.1995). This Court should not determine, especially in hindsight, what would have been the best strategy in a difficult case and resolve the issue of effectiveness on that basis. It is enough that we conclude that misidentification had some support in the evidence.
¶ 34. The last area of complaint concerns the jury instructions. Stewart claims that his trial counsel should have requested a trespass instruction. However, since the strategy was mistaken identity, it was plausible that counsel would not want to weaken that defense with arguing that perhaps it was Stewart after all, but he had no intent to commit a crime. If Stewart admitted being in the church, counsel may have decided that jurors would not accept that he simply was trespassing and did not have a desire to commit a larceny. As for the other instructions, the only possible error that we have already noted concerned the elements of the crime. A clearer objection certainly could have been made. Yet we find that if an objection had properly raised the issue, the judge's agreeing with the objection might have led to placing a requirement of proof in the instruction that "valuable things were kept for sale and use" in the church. There was evidence to support that element. Thus we find no prejudice from the possible error by his counsel on that instruction.
¶ 35. We cannot say that trial counsel's actions fell outside that of reasonable professional practice. Stewart has failed to demonstrate how any of these alleged errors by trial counsel deprived him of a fair trial, thus failing to satisfy one of the requirements for a successful ineffective assistance of counsel claim. Washington v. State, 800 So.2d 1140, 1145-46 (Miss. 2001).
*543 ¶ 36. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A CHURCH, SENTENCE OF FOURTEEN YEARS WITHOUT POSSIBILITY OF EARLY RELEASE, AND FINE OF $10,000 IS AFFIRMED. SENTENCE SHALL BE SERVED CONSECUTIVELY TO ANY SENTENCE CURRENTLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.