# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01426-COA

**JOHN B. ARNOLD, JR. A/K/A JOHN B. ARNOLD A/K/A JOHN BRUCE ARNOLD, JR.**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT:            11/05/2021
TRIAL JUDGE:                 HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:   OKTIBBEHA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:           SCOTT WINSTON COLOM
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 02/27/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.    A jury convicted John Arnold Jr. of two counts of attempted kidnapping of a child, one count of attempted escape, and one count of simple assault against a law enforcement officer. He was sentenced to serve a total of fifty-five years in the custody of the Mississippi Department of Corrections (MDOC). Arnold appeals his conviction, arguing the jury was not properly instructed, the jury instructions constructively amended his indictment, his convictions were not supported by sufficient evidence, and the trial court erred by denying his motion to sever the charges in his multi-count indictment. Finding no error, we affirm.

## STATEMENT OF THE FACTS

¶2.     When Natalie Morgan got married to Tyson Langston in the mid-2010s, Arnold was a family friend and served as a groomsman in their wedding. Morgan and Langston had several children before the couple divorced, including a son, N.L.[1] After the couple divorced in 2016, Morgan began working for Arnold. They began a romantic relationship later that year, which lasted about four months. After Morgan ended their relationship in early 2017, she tried to remain friends, but due to Arnold's possessive behavior, she ultimately broke off all communication with him in May of that same year.

¶3.     Arnold's prosecution arose out of a series of events that occurred in February 2018. At that time, N.L. was six years old and enrolled at Sudduth Elementary School in Oktibbeha County. On February 16, 2018, Arnold called Julianne Jackson, a woman who worked for him, and during the conversation told her that he was going to take N.L. out of school and spend time with him that day. Morgan would later testify that Arnold never had permission or authority to check the child out of school.

¶4.     Arnold made his way to Starkville Academy that same day and asked for N.L. The school receptionist informed Arnold that they did not have a student by that name, but Arnold insisted and repeatedly asked for N.L. Arnold indicated he was there for a school play, but a school administrator Lyn Moorehead told him their school was not having a play that day. Arnold eventually started to leave, but instead of turning in the direction of the exit, he walked back toward the school buildings. Moorehead followed him and asked if he needed

_____

[1] For protection and privacy, we use initials when referring to the minor child.

help with anything else. Arnold then headed to his vehicle, but instead of leaving, he got back out of the vehicle and again started walking toward the school. Moorehead called Starkville Academy's head of school, Jeremy Nicholas, and requested his intervention. Before Arnold reached the school, he was intercepted by Nicholas and stated he was related to N.L. and was there for a play. Nicholas reiterated to Arnold that he had no reason to be there, N.L. was not a student there, and no play was going on at the school. At this point, Arnold finally left and drove off.

¶5.	Morgan then received a call from Starkville Academy informing her that Arnold had come to the school asking for N.L. In turn, Morgan called Sudduth Elementary School, where N.L. actually attended, and alerted the receptionist, Latricia Bishop, in case Arnold came to Sudduth Elementary. She confirmed Arnold was not allowed to see N.L. or check him out of school. Bishop reported the information to the school principal and Resource Officer Campbell.

¶6.	Morgan also called her stepfather, Harold Clark, and told him what happened with Arnold at the school. According to Clark, he received the call from Morgan in the morning and later received a call from Arnold around 2 p.m., but did not answer. Shortly after the call, Arnold appeared at Clark's house. Clark informed Arnold that he did not understand why Arnold went to the school and that he wished Arnold would not do that again. Clark made Arnold promise him that Arnold would not attempt to see N.L. again.

¶7.	Later that same day, Arnold showed up at Sudduth Elementary. He was standing near

3

a computer kiosk machine the school used for student checkouts when Bishop recognized him. Bishop alerted Officer Campbell of his presence and then asked Arnold if she could help him. Arnold responded that he was there to check out N.L. from school. Bishop asked for Arnold's ID, but Arnold did not respond and walked out before turning back around and coming back inside to the area of the checkout kiosk again. At that time, Officer Campbell stepped in and escorted him outside. Bishop called Morgan and informed her that Arnold had come to the school and attempted to check N.L. out of school.

¶8.　　That evening, Morgan reported this to Starkville Police and the Sheriff's Office. Starkville Police obtained an arrest warrant for attempted kidnapping and took Arnold into custody that same night. He was released on bond three days later on February 19, 2018. One of the conditions of his bond was that he have no contact with Morgan or any of her family, and he was specifically advised those persons included Clark. Arnold violated the conditions of his bond the next day by attempting to call Clark. Morgan reported this to the police and Arnold was taken back into custody after his bond was revoked. He was released on bond again on February 22, 2018, under the same conditions as before but with the additional requirement that he wear an ankle monitor.

¶9.　　The following day, on February 23, 2018, Arnold went to yet another school, Henderson Ward Stewart Elementary, around the time of usual dismissal. A teacher working the bus lane, Monica Nunn, noticed Arnold walking briskly toward the school building. She approached him, and Arnold told her he was looking for N.L. When she asked the child's

4

grade or teacher, the only thing Arnold could tell her was that N.L. was six years old. Nunn informed Arnold that six-year-old students are at Sudduth Elementary, and he appeared to accept that answer and began walking away. As Arnold was leaving, Nunn realized that she recognized his face from his mugshot photo that was posted online and notified Assistant Principal Steve Eiland. While the pair were talking, Eiland noticed Arnold walking back toward the school's other entrance, and Nunn radioed to teachers to lock the gates and shut the school doors. Eiland approached Arnold and asked what business he had at the school. Arnold told Eiland he needed to pick up his son N.L. When he told Eiland that N.L. was in Pre-K, Arnold was again told this was not the correct school. Arnold nodded and left the school.

¶10. Law enforcement was notified and attempted to find Arnold using his ankle monitor. The officers discovered that the monitor had been removed but were able to call the monitoring company to learn the monitor's last known location. The company informed them that the last recorded location was traced back to an address less than half a mile from Henderson Ward Stewart. Law enforcement eventually located Arnold at his attorney's office and placed him under arrest that same day for again violating the original bond and on a second charge of attempted kidnapping.

¶11. On February 27, 2018, Arnold was outside at the Oktibbeha County jail in the recreation yard talking to Sergeant Dustyn Smith through the fence. Sergeant Smith entered the yard to get some water, and as he exited, Arnold attacked him from behind, grabbing him

around the neck. Arnold squeezed Sergeant Smith's neck while pushing him toward the gate and telling him to open it. Arnold then ran him into a wall, and in the tussle that ensued, Sergeant Smith was able to get Arnold off him and then draw his taser to subdue Arnold. Afterward, when Sergeant Smith was putting Arnold in the holding cell, Arnold stated, "I don't know what I was thinking. I've just got to get to that kid." As a result of the events at the jail, Arnold was charged with attempted escape and simple assault on a law enforcement officer.

## PROCEDURAL HISTORY

¶12.    After the charges were initially filed, the trial court entered an order in March 2018 requiring Arnold to undergo a mental health evaluation. In the meantime, on July 6, 2018, an Oktibbeha County grand jury returned a multi-count indictment against Arnold for two counts of attempted kidnapping, one count of attempted escape, and one count of simple assault against a law enforcement officer.

¶13.    A competency hearing was later conducted and the trial court entered a ruling in October 2018 finding Arnold incompetent to stand trial. Arnold was ordered to the State Hospital for treatment, competency restoration, and testing. Upon completion of his restoration at the State Hospital, a hearing to re-evaluate his competency was conducted in November 2019, and the trial court found him competent to stand trial.

¶14.    In March 2021, Arnold filed a motion requesting the trial court to appoint another

6

expert to conduct a *M'Naghten* analysis as to his state of mind at the time of the offenses.[2] The trial court granted the motion, and Dr. John Montgomery completed the assessment. Dr. Montgomery provided a written evaluation to the trial court, and the court adopted his findings, including that Arnold knew the difference between right and wrong at the time of the offenses. However, before trial, Arnold filed a notice of his intent to offer an insanity defense to his charges.

¶15.  In August 2021, Arnold filed a motion to sever the two charges of attempted kidnapping from the charges of attempted escape and simple assault of a law enforcement officer. After a hearing and a review of relevant factors, including the time between the offenses and the connectivity of the witnesses and charges, the trial court denied the motion to sever.

¶16.  Trial commenced in November 2021, and the State presented the testimony of Morgan, Clark, witnesses from the three schools, Arnold's former employee, and law enforcement officers. Arnold presented testimony from Dr. Montgomery in his defense. Proposed jury instructions were submitted by both parties, including proposed elements instructions for attempted kidnapping. The trial court rejected both the State's and Arnold's elements instructions, however, and allowed the parties to redraft them. The State then presented its modified elements instructions, S-1A and S-2A, which Arnold accepted, as well as S-3A, an explanation of terms included within kidnapping, which Arnold did not contest.

---

[2] *M'Naghten's Case*, 8 Eng. Rep. 718, 1843 WL 5869 (1843).

¶17. The jury found Arnold guilty of all four counts. The trial court sentenced him to serve twenty-five years for the conviction of the first count of attempted kidnapping. The court then sentenced Arnold to a term of twenty-five years, with five years suspended and twenty years to serve, and five years of post-release supervision for the conviction of the second count of attempted kidnapping. The court also sentenced Arnold to serve five years for the attempted escape and five years for the simple assault on a law enforcement officer. The court ordered all four sentences to be served consecutively to one another in MDOC's custody. Arnold filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied his motion, and Arnold now appeals.

**ANALYSIS**

### I. Jury Instructions

¶18. Arnold raises three issues related to the jury instructions, specifically pertaining to Instructions S-1A, S-2A, and S-3A. "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *McDowell v. State*, 311 So. 3d 1252, 1259-60 (¶17) (Miss. Ct. App. 2021) (quoting *Johnson v. State*, 252 So. 3d 597, 599 (¶8) (Miss. Ct. App. 2017)). To determine "whether error lies in granting or refusing a jury instruction, the instructions actually given must be read as a whole and in context." *Clark v. State*, 343 So. 3d 943, 985-86 (¶183) (Miss. 2022) (quoting *Ronk v. State*, 172 So. 3d 1112, 1125 (¶20) (Miss. 2015)). We "will not reverse the trial court when the jury instructions, 'taken as a whole, fairly—although not perfect—announce the applicable

8

primary rules of law.'" *McDowell*, 311 So. 3d at 1259-60 (¶17) (quoting *Johnson*, 252 So. 3d at 599 (¶8)).

¶19.    Arnold claims the trial court erred by giving jury instructions that (1) failed to instruct on every element of the crime by not including the elements for a completed kidnapping; (2) misstated the law when defining a kidnapping; and (3) contained a "variance" in the language used to describe the elements for a conviction such that it constructively amended his indictment.

### A.    The instructions contained the essential elements of attempted kidnapping.

¶20.    First, Arnold claims S-1A and S-2A did not include the essential elements of the attempt charges because they did not contain the elements for the crime of a completed kidnapping.[3] As stated earlier, the record from trial shows that Arnold did not ultimately

---

[3] Instruction S-1A (as given by the trial court) stated the elements of attempted kidnapping in Count 1 as follows:

1.    On or about February 16, 2018, in Oktibbeha County;
2.    John B. Arnold unlawfully designed and endeavored to commit the crime of kidnapping;
3.    By committing the following overt acts:
    a.    Attempting to remove [N.L.], a child under the age of sixteen from Starkville Academy and/or Sudduth Elementary School without the permission of [N.L.]'s parents; but
4.    John B. Arnold failed therein and/or was prevented from kidnapping [N.L.]

Instruction S-2A was identical but changed the date and the school name.

object to either of the S-1A or S-2A element instructions as given and did not specifically raise the issue of including the elements for a completed kidnapping. Rather, Arnold agreed to the trial court's giving instructions S-1A and S-2A, and at that time, the instructions advised the jury of the elements for only attempted kidnapping. If the "defendant fails to object to a jury instruction at trial, the defendant is procedurally barred from challenging the instruction on appeal." *McGilvary v. State*, 290 So. 3d 1273, 1280 (¶24) (Miss. Ct. App. 2020). Also, where "a party acquiesces to the giving of a jury instruction, that party is procedurally barred from later raising an error with the instruction on appeal." *Spiers v. State*, 361 So. 3d 643, 654-55 (¶36) (Miss. 2023) (quoting *Williams v. State*, 234 So. 3d 1278, 1287 (¶34) (Miss. 2017)). Therefore, because Arnold failed to make an objection at trial and agreed to the instructions given, he is procedurally barred from raising this issue on appeal, "and our review is restricted to the plain-error doctrine." *Hollingsworth v. State*, 269 So. 3d 456, 458 (¶7) (Miss. Ct. App. 2018).

¶21.    In an analysis under plain error review, "[o]nly an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Willis v. State*, 999 So. 2d 411, 414 (¶9) (Miss. Ct. App. 2008). The indictment charged Arnold with two counts of *attempted* kidnapping in violation of the Mississippi Code Annotated section 97-1-7 (Rev. 2014), which is the statute governing attempt crimes. He was *not* indicted for a violation under the kidnapping statute, Mississippi Code Annotated section 97-3-53 (Rev. 2014), and he was *not* charged with the crime of a *completed* kidnapping.

¶22.    The case of *Scott v. State*, 231 So. 3d 1024, 1034 (¶31) (Miss. Ct. App. 2016), is particularly instructive regarding the required elements for an indictment for attempt under section 97-1-7. In that case, Scott was indicted and convicted of attempted rape and on appeal raised that the trial court should have instructed the jury on the statutory definition of rape within the elements instruction. *Id*. Notably, the attempt elements instruction was nearly identical to the one given here. After review, this Court stated, "a proper jury instruction on attempt requires the 'three elements stated in the statute of (1) a design or endeavor to commit an offense, (2) an overt act toward commission thereof, and (3) a failure to consummate the act.'" *Id*. at 1035 (¶31) (quoting *Henderson v. State*, 660 So. 2d 220, 223 (Miss.1995)). As a result, we found "the instruction properly recited the law on attempted rape." *Id*. at 1036 (¶40). We have also recently rejected the exact same claim in an attempted murder case, *Carpenter v. State*, No. 2022-KA-00398-COA, 2023 WL 5026260, at *4 (¶23) (Miss. Ct. App. Aug. 8, 2023), *mot. for reh'g denied* (Jan. 9, 2024), *petition for cert. filed* (Jan. 22, 2024).[4] There, we also pointed out that "[p]roviding the jury with the elements of both attempt and the attempted felony could lead to confusion about what crime the defendant was charged with and what elements were required to be proved." *Id*.

¶23.    The same reasoning from *Scott* and *Carpenter* applies here to an instruction on the elements of attempted kidnapping. Therefore, the trial court did not commit plain error when

---

[4] While we recognize that *Carpenter v. State*, No. 2022-KA-00398-COA, 2023 WL 5026260 (Miss. Ct. App. Aug. 8, 2023), *mot. for reh'g denied* (Jan. 9, 2024), *petition for cert. filed* (Jan. 22, 2024), is not yet binding caselaw, it offers a helpful comparison.

11

it gave instructions S-1A and S-2A.

### B. The descriptive instruction of kidnapping did not misstate the law.

¶24. Second, Arnold claims Instruction S-3A contained an incorrect definition of kidnapping.[5] At trial, Arnold did not object to the language of which he now complains. Arnold's counsel objected to the first version of jury instruction S-3A the State proposed. The transcripts show that at trial, Arnold's counsel objected to the "definitional instructions" in S-3, but only to one specific, unrelated paragraph of the instructions. "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue." *Lee v. State*, 369 So. 3d 625, 633 (¶19) (Miss. Ct. App. 2023) (quoting *Sands v. State*, 315 So. 3d 1066, 1070 (¶10) (Miss. Ct. App. 2020)). But "[a]sserting grounds for an objection on appeal that differ from the ground given for the objection at the trial level does not properly preserve the objection for appellate review." *Taylor v. State*, 367 So. 3d 228, 238-39 (¶32) (Miss. Ct. App. 2020) (quoting *Bursey v. State*, 149 So. 3d 532, 535 (¶5) (Miss. Ct. App. 2014)). Therefore, this issue is procedurally barred and is limited to a plain error review in this appeal. *See Hollingsworth*, 269 So. 3d at 458-59 (¶8).

---

[5] Instruction S-3A contained several provisions, but the provision regarding "kidnapping" given by the trial court stated:

> The Court instructs the Jury that "kidnapping" as used in these instructions includes the attempt to confine a child under the age of sixteen (16) years against the will of the child's parents or legal guardians.

12

¶25. Arnold's argument focuses on two words in the S-3A instruction—"attempt" and "confine." However, consistent with our reasoning above, the use of the word "attempt" is not an incorrect statement of the law applicable to this case because he was indicted under the attempt statute: section 97-1-7 of the Mississippi Code Annotated. Further, despite the unnecessary complexity of the language utilized in section 97-3-53, the kidnapping statute includes some derivative of the word "confine" multiple times. Arnold is correct that S-3A does not include the statutory language "forcibly seize, inveigle or kidnap." But to be clear, our caselaw has previously pointed out that "[c]onfinement of the victim . . . is an essential element of the crime of kidnapping." *Scott*, 231 So. 3d at 1037 (¶50) (quoting 3 Jeffrey Jackson et al., Encyclopedia of Mississippi Law § 23:81 (2016)). Therefore, like our previous holding in a similar appeal involving a kidnapping instruction, "while greater specificity in the instructions here would have been preferred, we find that the instructions given in this case are not so flawed that they rise to the level of plain error." *Mitchell v. State*, 327 So. 3d 142, 155 (¶66) (Miss. Ct. App. 2021).

### C. The instructions did not constructively amend the indictment.

¶26. Similar to his previous argument, Arnold contends that the language complained of in S-3A constructively amends his indictment. However, because of the failure to object previously discussed, our review is again limited to the plain-error doctrine. "When an issue of an improper amending of the indictment through instructions is made, the Supreme Court has insisted that this specific issue have first been raised at the trial level." *Stewart v. State*,

13

839 So. 2d 535, 539 (¶16) (Miss. Ct. App. 2002). Again, if the "defendant fails to object to a jury instruction at trial, the defendant is procedurally barred from challenging the instruction on appeal." *McGilvary*, 290 So. 3d at 1280 (¶24).

¶27. Within the framework of the requirements of plain error review, as previously described, we find no merit to Arnold's claim that the language from S-3A varied such that it constructively amended his indictment. First, it is important to note that the information contained in S-3A is not an elements instruction informing the jury of the proof required to find Arnold guilty of the crime for which he was indicted. As previously discussed, he was specifically indicted for attempt under section 97-1-7. Because he was indicted under the "attempt" statute, the elements that must be proved include "(1) a design or endeavor to commit an offense, (2) an overt act toward commission thereof, and (3) a failure to consummate the act." *Scott*, 231 So. 3d at 1035 (¶38) (quoting *Henderson*, 660 So. 2d at 223). As such, the trial court characterized the content of S-3A as "a legal explanation of those terms of art" in the essential elements instructions outlined in S-1A and S-2A. Instruction S-3A was not made to mirror the indictment or track the language of the charging statute. Accordingly, the comparison of language in S-3A to the language in Arnold's indictment does not reflect an actual variance that would constructively amend his indictment.

¶28. Even if this Court were to find that the indictment could be affected by the contents of S-3A, "not all variances between the indictment and instructions constitute a constructive

14

amendment." *Morton v. State*, 246 So. 3d 895, 903 (¶20) (Miss. Ct. App. 2017) (quoting *Graham v. State*, 185 So. 3d 992, 1001 (¶25) (Miss. 2016)). "To properly categorize an instruction as error, its variance from the language of the indictment must be material." *Young v. State*, 271 So. 3d 650, 657 (¶27) (Miss. Ct. App. 2018) (quoting *Faulkner v. State*, 109 So. 3d 142, 147 (¶16) (Miss. Ct. App. 2013)). Under this concept, "[t]he central question is whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Clark*, 343 So. 3d at 999 (¶268) (quoting *Bell v. State*, 725 So. 2d 836, 855 (¶61) (Miss. 1998)).

¶29.    Setting aside the fact that S-3A was not the requisite elements instruction, this instruction does reflect a difference in language—from the phrase "forcibly seize, inveigle or kidnap" in the indictment to the word "confine" in the instruction. "Assessing the effect of the variance on the integrity of [Arnold's] trial, we find that [S-3A] did not substantially alter the requisite elements of kidnapping." *Young*, 271 So. 3d at 656 (¶28). Therefore, even if the instruction resulted in a variance, the difference in the terms was not material because "[t]he essence of the charged offense remained the same, as the instruction still required the jury to find beyond a reasonable doubt that [Arnold attempted to] kidnap[] [N.L.], a minor child under the age of sixteen, against the will of [his] parents." *Id*.

¶30.    Each of Arnold's claims of error related to the jury instructions are procedurally barred on appeal as a result of Arnold's failure to object and properly preserve the issues at trial. Procedural bars notwithstanding, even under a plain error review, each of his challenges

15

to the jury instructions lacks merit. We therefore find that there was no error in the jury instructions that warrants reversal.

## II. Sufficiency of the Evidence

¶31. Next, Arnold challenges the sufficiency of the evidence supporting his convictions, specifically the intent element required for attempted kidnapping. He alleges that the evidence presented at trial did not show that Arnold intended to kidnap N.L. but, rather, that the evidence established Arnold was incapable of forming the requisite mens rea for attempted kidnapping.

¶32. The trial court denied Arnold's JNOV motion, and we review that ruling de novo. *McCray v. State*, 263 So. 3d 1021, 1029 (¶24) (Miss. Ct. App. 2018). This Court "will reverse only where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *McDowell*, 311 So. 3d at 1259 (¶16) (quoting *McCray*, 263 So. 3d at 1029 (¶24)). "[A]ll evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." *Sullivan v. State*, 281 So. 3d 1146, 1161 (¶35) (Miss. Ct. App. 2019) (quoting *Jerninghan v. State*, 910 So. 2d 748, 751 (¶6) (Miss. Ct. App. 2005)). Viewing the evidence in the light most favorable to the prosecution, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McDowell*, 311 So. 3d at 1259 (¶16).

16

¶33. "A person is guilty of an attempted crime when he 'designs and endeavors to commit an offense . . . and . . . does any overt act toward the commission thereof' but fails." *Spiers*, 361 So. 3d at 658 (¶49) (quoting Miss. Code Ann. § 97-1-7(1)). "Courts interpret 'attempt' to mean the intent to do something, and some actual effort to put the intent into effect." *Sullivan*, 281 So. 3d at 1162 (¶38) (quoting *Gibson v. State*, 660 So. 2d 1268, 1270 (Miss. 1995)).[6]

¶34. "[W]hether the requisite intent to commit a crime is present is 'a question of fact to be gleaned by the jury from the facts shown in each case.'" *Stewart*, 839 So. 2d at 539 (¶19) (quoting *Shive v. State*, 507 So. 2d 898, 900 (Miss.1987)). It is often the case that "the State is not privy to direct evidence of intent because of the impossibility of peering inside a defendant's mind[.]" *Moffett v. State*, 287 So. 3d 975, 979 (¶14) (Miss. Ct. App. 2019) (quoting *Thomas v. State*, 277 So. 3d 532, 535 (¶14) (Miss. 2019)). As such, generally "[t]he intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent." *Voyles v. State*, 362 So. 2d 1236, 1242-43 (Miss. 1978) (quoting *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974)); *see also Stewart*, 839 So. 2d at 539 (¶19) (quoting *Shive*, 507 So. 2d at 900) ("Intent may be proven by the 'surrounding circumstances' and

---

[6] "What appellant intended to do with or to the child if he had succeeded in taking [him] home, or wherever he intended to take [him], may be a matter for speculation. The statute does not require such purpose or motive to be proven." *McGuire v. State*, 231 Miss. 375, 381-82, 95 So. 2d 537, 540 (1957).

'circumstantial evidence.'"). "[T]he jury is free to infer intent from the defendant's 'acts coupled with the surrounding facts and circumstances.'" *Moffett*, 287 So. 3d at 979 (¶14) (quoting *Thomas*, 277 So. 3d at 535 (¶14)).

¶35.   Applied to this case, "the crime of attempted kidnapping requires a showing that [Arnold] intended to kidnap [N.L.], made 'a direct ineffectual act done toward' the kidnapping, and failed 'to consummate' the kidnapping." *Mitchell*, 327 So. 3d at 148 (¶16) (quoting *Bucklew v. State*, 206 So. 2d 200, 202 (Miss. 1968)). We ask whether sufficient evidence existed for a rational jury to find that Arnold "intended to kidnap the child within the meaning of the statute[,]" and we note that Arnold's "ultimate motive in confining or depriving [N.L.] of [his] liberty is immaterial." *McGuire v. State*, 231 Miss. 375, 95 So. 2d 537, 540 (1957).

¶36.   Looking at the record as a whole, the evidence shows that as to the first count of attempted kidnapping arising from actions taken on February 16, 2018, Arnold called his work assistant and told her that he was going to take N.L. out of school despite that Morgan had never given him the authority to do so. He went to two different schools within a short time frame asking about and searching for N.L. At the first school, Arnold made his way onto the school premises three different times in three different areas of the school property despite being told N.L. was not a student there, and Arnold lied to school officials claiming to be a relative of N.L. Arnold went directly to the office area of the second school and again sought to check out N.L. Arnold proceeded to go near a kiosk machine used to check

students out from school and was asked for identification before being asked to leave.

¶37. As to the second charge for attempted kidnapping arising out of actions on February 23, 2018, the evidence shows Arnold was placed on an ankle monitor and was informed after the first instance that he was not allowed to contact N.L. He removed his ankle monitor, ignored his restrictions, and went to yet another school near dismissal time. Arnold told a teacher he was looking for N.L. and attempted to gain entry into the school twice through two different entrances despite being told he was at the wrong school. He also told the principal that he needed to pick up "his son" N.L.

¶38. "The [evidence] shows that [Arnold] did commit overt acts in an effort to have the child go with him to his home or some other place[,]" in defiance of N.L.'s parents' instruction to stay away from N.L. and in disregard of court orders restricting him from contacting N.L. *Id*. From the evidence presented, a reasonable juror could infer that Arnold intended to remove N.L. from school without permission and, thus, formed the requisite intent for attempted kidnapping. We find that sufficient evidence existed for a rational jury to find that the State proved the essential elements for the crime of attempted kidnapping beyond a reasonable doubt.

### III. Severance of the Multi-Count Indictment

¶39. Finally, Arnold argues the charges for attempted kidnapping should have been severed from the charges for attempted escape and assault in his multi-count indictment, and he contends the trial court's denial of his motion to sever was an abuse of discretion. Mississippi

Code Annotated section 99-7-2 (Rev. 2014), allows for more than one crime to be charged in the same indictment if certain requirements are met. Specifically, the relevant portion of the statute states:

> Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

Miss. Code Ann. § 99-7-2 (Rev. 2014). As such, the State was permitted to charge Arnold with four different offenses in the same indictment if the offenses were listed as four separate counts and if the four offenses were based on the same act or transaction or were based on two or more acts or transactions that intertwined or that constituted parts of a common scheme.

¶40. "If a criminal defendant believes that the State has wrongfully proceeded on a multi-count indictment, he or she should file a motion to sever the offenses." *Stribling v. State*, 81 So. 3d 1155, 1162 (¶30) (Miss. Ct. App. 2011). Once the "motion to sever is made, the State bears the burden of making out a prima facie case showing the offenses charged are within the language of the statute." *Singleton v. State*, 151 So. 3d 1046, 1050 (¶15) (Miss. Ct. App. 2014) (quoting *Harper v. State*, 102 So. 3d 1154, 1158 (¶9) (Miss. Ct. App. 2012)). "If the State meets its initial burden, the defendant may thereafter rebut the State's case by showing the 'offenses were separate and distinct acts or transactions.'" *Id.* (quoting *Rushing v. State*, 911 So. 2d 526, 533 (¶14) (Miss. 2005)). The trial courts are instructed to conduct

a hearing on the issue of whether to sever the counts in an indictment, and "[i]f the trial court holds such a hearing, this Court gives deference to the trial court's findings, unless an abuse of discretion occurred." *Id*. at 1050 (¶16) (quoting *Broderick v. State*, 878 So. 2d 103, 105 (¶6) (Miss. Ct. App. 2003)).

¶41.    There are three factors that a trial court takes into consideration for severing indictments: "(1) whether the time period between the occurrences is insignificant; (2) whether the evidence proving each count would be admissible to prove each of the other counts; and (3)[]whether the crimes are interwoven." *Singleton*, 151 So. 3d at 1050 (¶17) (quoting *Stribling*, 81 So. 3d at 1162 (¶29)).[7]

¶42.    According to Arnold, his multi-count indictment should have been severed because (a) the attempted kidnappings occurred at a separate and distinct time (pre-arrest) from the attempted escape and assault (post-arrest); (b) the evidence for the attempted kidnappings would not be admissible to prove his guilt for the attempted escape and assault on the grounds of prior bad acts; and (c) the facts underlying the attempted escape and assault are not based on the same act or transaction as the attempted kidnappings, nor are the four counts connected by a common plan. Arnold alleges there is no connection between the four counts due to the facts of the offense in the attempted escape being too remote from the offense in the attempted kidnappings.

¶43.    At the hearing on Arnold's motion to sever, the trial court determined (1) not a long

_____

[7] *See Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991).

21

time period existed between each offense in the indictment; (2) the witnesses were similar such that testimony and evidence for one count would also be admissible in separate trials of the other counts, (3) his insanity defense was based on evidence that spanned all four offenses, and (4) all four offenses were intertwined by an underlying nexus or connection to N.L. Therefore, the trial court found that the four counts against Arnold were sufficiently interwoven, and the multi-count indictment was proper.

¶44. Giving deference to the trial court's findings, we apply the three factors set out by our supreme court and consider "whether the time period between [Arnold's four] occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts, and whether [Arnold's four] crimes are interwoven." *Harper*, 102 So. 3d at 1158 (¶9) (quoting *Corley*, 584 So. 2d at 772).

¶45. Here, each of the four counts in the indictment is based on events that occurred within a period beginning on February 16, 2018, and ending on February 28, 2018. The lapse of time between Arnold's actions underlying the first attempted kidnapping and those underlying the attempted escape and assault (both of which involve acts from the same day) was twelve days. The lapse of time between his actions from the second attempted kidnapping and his actions from the attempted escape and assault was only five days. We cannot conclude that the trial court reversibly erred in finding that the time element was insignificant.

¶46. As for the second factor regarding witness similarity, Arnold's argument on appeal

22

focuses on whether the evidence of each separate crime was admissible for the other crimes under Mississippi Rule of Evidence 404. However, "[t]he issue of whether the evidence might be admissible pursuant to Mississippi Rule of Evidence 404(b) is not relevant to the trial court's consideration of a motion to sever offenses in a multi-count indictment." *Gunn v. State*, 174 So. 3d 848, 857 (¶25) (Miss. Ct. App. 2014) (quoting *Harper*, 102 So. 3d at 1158 (¶9)). "Whether the evidence would be admissible under [Rule 404] has no bearing on whether the trial court should allow a multi-count indictment." *Corley*, 584 So. 2d at 772. Furthermore, "[t]here is no authority for restricting the multi-count-indictment statute because some element of proof necessary as to one charge would be inadmissible on another charge if tried separately." *Roberson v. State*, 287 So. 3d 219, 243 (¶81) (Miss. Ct. App. 2017) (quoting *Armstead v. State*, 978 So. 2d 642, 648 (¶49) (Miss. 2008)). Additionally, "the fact that some of the witnesses would testify as to only some of the offenses" has "never alone been a factor to determine questions of trials involving multi-count indictments." *Gunn*, 174 So. 3d at 857 (¶23) (quoting *Harper*, 102 So. 3d at 1158 (¶12)).

¶47.    The evidence for both attempted kidnappings consisted of testimony from N.L.'s family members, eyewitnesses from the schools, and law enforcement officials. For the attempted escape and assault, the evidence consisted of eyewitness testimony from the law enforcement officer at the Oktibbeha jail.

¶48.    The testimonial evidence from the attempted kidnappings, such as N.L.'s mother's testimony, would be admissible in a separate trial for the attempted escape to show Arnold's

23

"motive, opportunity, intent, preparation, and plan." N.L.'s mother could attest to Arnold's persistent and reoccurring actions searching for and trying to find N.L. As the State mentioned at the severance hearing, this testimony would support the argument that Arnold was referring to N.L. when he told the jail officer he "needed to get to that kid." The testimony would also provide evidence that his actions in trying to get out of jail were a continuation of his plan or scheme to kidnap N.L. Conversely, the jail officer's testimony regarding Counts 3 and 4 would be admissible at separate trials for the attempted kidnappings for the same reasons. The officer's testimony about Arnold's statement during his attempted escape could be presented for the attempted kidnappings to show a continued motive, intent, or plan by Arnold to pursue and kidnap N.L.

¶49. The trial court stated at the hearing, "There are pretty much the same witnesses to prove the counts. There is one or two different witnesses, mainly the jailer, as far as the assault goes and the escape. But the escape, as stated reasonably, the escape at least in the indictment is, that he needed to get that kid." Ultimately in this case, "the trial judge correctly recognized that[] in trying the [four] counts together, there would be some evidence in common and some not." *Golden v. State*, 968 So. 2d 378, 383 (¶17) (Miss. 2007).[8] Because the trial court took into account the factors that were common and the overlapping evidence,

---

[8] "[A]lthough all the evidence for each count could not be used to prove the other counts, much of the [witnesses'] testimonies and evidence offered by the State was admissible to prove the other counts." *Kirkland v. State*, 373 So. 3d 149, 160 (¶60) (Miss. Ct. App. 2023).

the trial court did not abuse its discretion in considering the second factor.

¶50. Lastly, for "the third factor, the question posed is whether the [four crimes] committed by [Arnold] were interwoven, that is, part of a common plan or scheme." *Id.* at 384 (¶18). The trial court found there was a common thread in Arnold's crimes. The court stated, "Here, you've got sort of the underlying nexus or connection is absolutely this child, this Mr. [N.L.]." Further, the record shows the trial court determined that "[N.L.] seems to be sort of the common issue in Counts 1, 2, and potentially 3. I think 4 is actually also relevant to show that the alleged steps that this defendant may go to try to get to this [N.L.]." The trial court found the four crimes intertwined.

¶51. The evidence in this case supports the trial court's determination. The attempted kidnappings were connected by the fact that both are for the same offense of attempted kidnapping, both targeted at the same victim (N.L.), and both occurred within days of each other. The attempted escape has a connection to the attempted kidnappings in that those attempted kidnapping offenses were the reason Arnold was in jail at the time the attempted escape arose. We mostly agree with the trial court that for "Count 3, the indictment at least charges that [Arnold] said he needed to get out so he could get that kid. Now, I understand it doesn't say 'N.L.' or whatever the child's initials are. But that's something that I think a jury could infer based upon the evidence of the other two counts." The assault arises out of the same occurrence and set of facts as the attempted escape clearly establishing a connection. Therefore, we cannot find that the trial court's determination that the four

25

offenses were intertwined was reversible error.

¶52. Based on our review of the record, the trial court did not abuse its discretion by finding the time periods insignificant and the similarity of witnesses and the crimes to be interwoven. The trial court's denial of Arnold's motion to sever was not reversible error.

## CONCLUSION

¶53. We find that the jury instructions given at Arnold's trial properly announced the elements for the charged offenses of attempted kidnapping, were not a misstatement of the law, and did not contain a variance that constructively amended his indictment. Additionally, we find that sufficient evidence was presented to support the convictions of both attempted kidnappings. Furthermore, we find that the court did not abuse its discretion when it denied Arnold's motion to sever his indictment. Thus, we affirm the trial court's ruling and Arnold's convictions and sentences.

¶54. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**